UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| In re the Matter of John Doe, by and through his Parents, James Doe and Jane Doe, | ) ) ) ) | Civil File No. |
| Plaintiffs, | ) ) ) | **Verified Complaint** |
| v. | ) ) | |
| Saint Paul Conservatory for the Performing Arts, | ) ) ) | |
| Defendant. | ) | Request for jury trial |

For their Complaint, Plaintiffs James and Jane Doe ("Parents"), on behalf of their minor

child, John Doe (collectively "Plaintiffs") state against the Saint Paul Conservatory for the

Performing Arts ("Conservatory") the following:

> Since misconduct charges if sustained and recorded could seriously damage the students' reputation as well as interfere with later educational and employment opportunities, the State's claimed right to determine unilaterally and without process whether that misconduct has occurred immediately collides with the Due Process Clause's prohibition against arbitrary deprivation of liberty.

*Goss v. Lopez*, 419 U.S. 565, 574-75, 95 S.Ct. 729 (1975).

## I.     PRELIMINARY STATEMENT

1.     This is an action for injunctive relief, declaratory relief, and money damages arising out of

the irreparable damage to John Doe's property and liberty interests as a result of the Conservatory's

suspending him, denying him a meaningful opportunity to be heard, and creating a hostile

education environment.

## II.     JURISDICTION

2.     Plaintiffs bring this action pursuant to 42 U.S.C §§ 1983 and 1988, the Fourteenth

1

Amendment to the United States Constitution, 28 U.S.C. §§ 1331 and 1343, and 28 U.S.C. § 1367. This Court has original jurisdiction over Counts I and II and supplemental jurisdiction over Count III.

3.     Venue in this district is authorized by 28 U.S.C. § 1391 (b) because the Conservatory conducts business in this district and because this district is where a substantial part of the events or omissions giving rise to the claims occurred.

## III.   PARTIES

4.     Plaintiff John Doe is at all times materials herein, a citizen of the United States and a resident of the state of Minnesota.  He is a fifteen-year old minor child open-enrolled and attending the Saint Paul Conservatory for the Performing Arts ("Conservatory").

5.     Plaintiffs James and Jane Doe ("Parents") are John Doe's parents and natural guardians. John Doe is their oldest child of three children.

6.     John Doe is a fifteen student at the Conservatory and began attending August 22, 2017 in his sophomore year. He is also a performing artist who has auditioned and participated in many community and school performances.

7.     The Saint Paul Conservatory for the Performing Arts is a public charter school district organized and operated under the laws of the state of Minnesota.

8.     The Conservatory is a four-year performing arts high school focusing on academics and performing arts located in Saint Paul, Minnesota.   The majority of students attending the Conservatory are female.

## IV.   FACTS

9.     Prior to October 9, 2017, John Doe had never been disciplined at school.  John Doe entered the Conservatory for his sophomore school year, having taken honors and advanced placement

2

classes.  John Doe is a performing artist who auditioned for and received roles, including a leading

role, with local, respected children's theatre and ballet company.

10.      John Doe is a talented, dedicated and exemplary student of mixed race who began attending

the Conservatory in September 2017.  He entered the Conservatory as a sophomore with a grade

point average of 3.4.  John Doe participated in honors' classes in both his freshman and sophomore

years.  He is also a performing artist who has performed with the local arts community include a

children's theatre and ballet.  He has dedicated years to the development of his performing arts

skills and has auditioned and received roles, most recently roles in three productions within theatre

and ballet companies.

11.      Within the first weeks of school, John Doe developed a group of female students who

became his friends, one of whom he had performed with for 3 years.  They sat near each other and

socialized in classes, and regularly ate lunch together.  Nothing about their friendship was unusual

and no female student ever told John Doe that he made them uncomfortable in anyway.  In fact,

his female friends were affectionate with him, as he was in return.  John Doe never touched any of

his friends inappropriately nor made any untoward remarks.

12.      On October 9, 2017, John Doe was pulled from his second period Theatre class by the

guidance counselor, Ilah Raleigh and taken to her office.  Ms. Raleigh was angry and verbally

confrontational with John Doe when she presented allegations by female students.  She did not

provide him with a *Tennessen* warning, as required for a state actor to conduct an investigation

and collect public data from private individuals.  As Ms. Raleigh verbally recited the allegations,

John Doe, upset by the allegations, interrupted to assert that the allegations were false.  Ms. Raleigh

informed him that he was not to interrupt her.  She also stated that there was a "pattern" of John

Doe's behavior and his denouncements were evidence of his guilt.  Ms. Raleigh did not provide

John Doe with a statement of the allegations, copies of any student or witness statements, or the testimony that would be provided to support the allegations.

13.     John Doe persisted in denying any wrongdoing but Ms. Raleigh stated that his response did not matter, that he was suspended immediately for a period of five (5) days, and that he was to wait in a student holding room for his parents to arrive to pick him up.

14.     John Doe was shocked, confused and hurt by the allegations. He spent the remainder of the second hour in the holding room.  He left once to use the restroom, ran into his English teacher and broke down over the allegations.  He was reportedly sobbing and incoherent. *Exhibit No. 1.*

15.     After the interview with John Doe, Ms. Raleigh called his parents on the telephone to inform them that he had been suspended immediately and that they were to come to pick him up. The Parents were informed that he was being disciplined for sexual harassment.  Both parents immediately left their employment to go to the school.  When John Doe's Parents arrived, they met with Ms. Raleigh and Ellen Delaney, Director of SPCPA.  Ms. Raleigh verbally described the allegations, as she had with John Doe.  The parents responded with shock, asserted that this was not in John Doe's character, that he had friends who were young woman and had performed with young woman for years.  The Parents also stated he had never been in trouble before in any environment.  Ms. Raleigh informed the Parents that there was an earlier incident that she had not reported or investigated.  At the end of the meeting, Ms. Delaney stated that the suspension would be reduced to three days.

16.     John Doe's parents, stunned by the allegations and meeting, asked about the impact the allegations would have on him at school and in his college application.  They asked that the situation remain private.   Both Ms. Raleigh and Ms. Delaney assured the parents that the allegations and suspension would remain confidential and would not affect his college application.

4

The Parents subsequently learned that the Common Application for college students did inquire into disciplinary suspensions from high school.[1]

17.     During the same meeting, Ms. Raleigh repeatedly stated to the parents that "he admitted to it."  The Parents subsequently learned from John Doe that he denied the allegations.  John Doe was brought in at the end of the meeting but he continued to be upset and tearful.  Both Parents expressed concerns regarding the reported behavior.  No questions were asked of John Doe.  Ms. Raleigh informed John Doe that he was immediately dismissed for Conservatory and could not be on campus for three days.  She also stated that there was no need for a re-instatement meeting identified in the Handbook.

18.     The Conservatory's Student Handbook permits the immediate dismissal of a student under circumstances in which the student's conduct was "[s]ignificantly disrupting other students' rights to an education; disrupting the ability of school personnel to perform their duties; disrupting school-sponsored activities; engaged in conduct that endangers other pupils or surrounding persons (including school district employees or property of the school)" or "[s]ignificantly interfering with a teacher's ability to teach or communicate effectively with students in the class or interfering with other students' ability to learn."  *Exhibit No. 3, at p. 22*.  John Doe removal from his second period Theatre class and the Conservatory was in plain view of his teachers and peers.

19.     Minnesota state law requires that "[n]o public school shall deny due process or equal protection of the law to any public school pupil involved in a dismissal proceeding which may result in suspension, exclusion, or expulsion." Minn. Stat. § 121A.42.

---

[1] According to the Common Application to College used by students to apply to colleges and universities does ask about suspensions and dismissals from school. *Exhibit No. 2, at p. 5.*

20.     The Plaintiffs have repeatedly asked the Conservatory administration to challenge and appeal the discipline, for an opportunity for adequate notice of the allegations, to be heard and to clear John Doe's name. The Conservatory has declined the requests.

21.     On the day of his suspension, John Doe immediately became the target of bullying through electronic social media.  John Doe received the following threat:  "Ay i hear you sexual touching on girls i got to beat you ass as soon aa i see you bro end of story you dont even gotta reply its happening."  *Exhibit No. 4*.  In another message to John Doe a Conservatory student alleged that he made "racist, sexist and downright ignorant remarks."  *Id*.  After alleging that John Doe made the Conservatory a "space of fear and silence", the student asserted "[w]e will all rally against you no matter the kind of bullshit the administration tries to pass off."  *Id*. An Instagram account entitled *Screaming.Sunflowers* was opened protesting John Doe's return to school and threatening a strike on October 25, 2017.  *Exhibit No. 5*.  Despite informing the Conservatory of the threats, the Conservatory remained silent and inactive.  The Conservatory administration did agree to monitor the situation but the administration's reports on John Doe's school day was at odds with his experience. In the classroom, John Doe was being physically and psychologically ostracized. Students and friends refused to work with him on pre-existing and future projects, would not sit near him, would stare, point and whisper.

22.     On October 10, 2017, Jane Doe contacted Ms. Delaney by telephone to discuss the social media threats.  Ms. Delaney informed the Parents that there were new allegations of harassment being made against John Doe.  Ms. Delaney expressed doubts about the veracity of the additional reports because of the timing.   No information regarding the new allegations were disclosed to the Plaintiffs.

23.     Ms. Delaney and Jane Doe agreed to a further telephone conference on October 12, 2017. During the October 12, 2017 telephone call, Ms. Delaney asked Jane Doe whether her son intended to return to school.  When Jane Doe stated that he would, Ms. Delaney informed her that if John Doe returned to school he would like to suspended again and expelled because of the additional allegations. Ms. Delaney also informed Jane Doe that law enforcement had been contacted.

24.     The Plaintiffs immediately obtained legal counsel and asked to meet with the Conservatory to address the allegations and John Doe's return to school. Despite the representations to Jane Doe, the Conservatory agreed to his return.  The Parents wanted to meet with the Conservatory before he returned.  The parties met on Monday October 16, 2017 at 10:00 am.  The Plaintiffs attended with counsel, as did the Conservatory.  Ms. Delaney, Director, Callie Jacobs, Superintendent and Brian Goranson, Artistic Director.  The Plaintiffs were presented with a document to sign which reflected "If [John Doe] were to violate these policies in the future, he would receive the following discipline: 2nd offense, within one calendar year: Expulsion."  *Exhibit No. 6.*  The Plaintiffs repeatedly asked to challenge the allegations and to be provided with all information related to the allegations.  The Conservatory responded by providing, for the first time, Ms. Raleigh's notes regarding the discipline.  *Exhibit No. 7.*

25.     In the meeting, the Plaintiffs repeatedly challenged the allegations and asked for any direct evidence supporting the disciplinary action.  The Plaintiffs asked repeatedly for a process to challenge the allegations and clear his name.  The Conservatory declined to provide additional information.  The Plaintiffs told the Conservatory of the collateral consequences to his reputation, college applications and participation at the local children's theatre and ballet company.  The parties discussed the social media threats and bullying and the Plaintiffs asked what if anything

was being done.  The Conservatory again declined to respond.  The Conservatory staff stated that they did not know if law enforcement was investigating the allegations.

26.     The parties did agree that because of the social media threats and environment at the Conservatory, discrete adult monitoring would be needed, particularly as John Doe moved from building to building. The Plaintiffs asked for the monitoring to ensure his physical safety as well as to avoid further false allegations.    John Doe was permitted to join his next class at the end of the meeting.

27.     Each time the Plaintiffs were notified of any threats against John Doe, the materials were sent directly to the Conservatory administration.  John Doe did not return to school on October 12, 2017 when his suspension expired, in part because of the Plaintiffs' concern for his safety and the lack of response by the Conservatory to those concerns.  The Plaintiffs have not been informed whether the Conservatory is investigating the threats against John Doe by his peers.

28.     In addition to the social media threats, the suspension was disclosed in the arts community. John Doe was suspended from a performance and his future performances are in jeopardy.  The Plaintiffs were told that John Doe was replaced by a professional dancer in one performance because of the allegations.  One company has asked John Doe's Parents to attend each practice because the company fears that he may be the subject of false allegations within the troupe without a witness.  One company is considering to suspend his performance in a role for which he auditioned and is set to begin rehearsal in December 2017.

29.     The Plaintiffs' received the Notice of Suspension on October 12, 2017.  The Notice of Suspension contained the following allegation:

> Three students have reported to Ms. Raleigh a pattern of harassment that [John Doe] engaged in including inappropriate touch: sitting too close, touching without permission, grabbing a student's leg by the crotch, licking a student's hand, grabbing a student from

behind and groping.  Each student has communicated verbally and non-verbally to [John Doe] that they want him to stop.  In each case, he escalates his behaviors.

*Exhibit No. 8*.  Ms. Raleigh's allegations were uncorroborated by any student or witness statements and there was no discussion about the testimony that would be present and by whom.  The Conservatory denied the Plaintiffs' right to examine any evidence that corroborated the allegations.  The Conservatory rejected the Plaintiffs' request to, preliminarily, redact the students' personal information from the evidence in order for John Doe to see and defend against the allegations.

30.    The Conservatory defines harassment in its Discipline Matrix as "[p]articipating in or conspiring with others to engage in acts that injure, degrade, intimidate or disgrace other individuals, including indecent exposure, displaying pornography and words or actions that negatively impact an individual or group based on their racial, cultural or religious background, their sex, their sexual orientation, any disabilities, creed, national origin, marital status, status with regard to public assistance or age."  *Ex. 3, at p. 29*.

31.    The notice also set forth that if additional allegations were made, John Doe would face expulsion.  *Ex. 6.*

32.    Two months into his sophomore year, John Doe has been completed ostracized by his peers at the Conservatory because of the stigmatizing allegations.  The entire student body, made up primarily of female students, avoids him, points and whispers at him, and refuses to work with him.

33.    On the morning of October 25, 2017, without any prior warning, John Doe was required to pass through a group of individuals protesting his attend in the morning.  The protesters were carrying signs which protested his return to school.  Some of the protesters recognized John Doe and began shouting at him.  John Doe was required, without forewarning or adult assistance, to pass through the student and adult protesters not only in the morning but also when he left school

in the late afternoon, when passing between buildings and during lunch recess.  Law enforcement was called to the school to address the protesters but no one assisted John Doe in navigating the frightening and confrontational situation.  Although the protesters were present before John Doe got off his school bus, no one from the Conservatory made any effort through telephone calls or meeting his bus to give him or his Parents advance warning that protesters were in front of the Conservatory.  The principal was at the door after John Doe crossed the protest line.  In addition to carrying signs and chanting asserting his guilt and protesting his return, one protester pointed to John Doe and stated "There he is."  John Doe, fearful for his well-being, entered and exited the Conservatory, without adult assistance, as quickly as possible.  Law enforcement was called around mid-day to the Conservatory regarding the protesters.  *Exhibit No. 9*.

34.     The protesters were featured on the evening news. [2]  According to the press, the allegations have mushroomed from 3 students to ten (10) students alleging sexual harassment. According to the report, the Conservatory was working with law enforcement and the Minnesota Department of Education to address the issues.  The Plaintiffs have been provided no information or assistance from the Conservatory.  Consequently, John Doe is unable to return to the Conservatory because of the hostile education environment that continues unabated.

35.     Plaintiffs seek relief from the Conservatory for infringing John Doe's right to an education, due process, and his reputation.  His right to an education is a fundamental right in Minnesota.

36.     The Conservatory has a policy and procedure entitled Student Conduct and Consequences in the Conservatory's 2016-2017 Student and Parent Handbook ("Handbook").  According to the Conservatory's policy, a student is permitted a hearing only when the consequences result in an

---

[2] See, http://kstp.com/news/st-paul-police-investigate-sexual-assault-allegations-against-high-school-student/4647254/.

exclusion or expulsion.  *Ex. 3 at 20*.  It does not provide a hearing for a dismissal or suspension.

The Minnesota Pupil Fair Dismissal Act defines "dismissal" and "expulsion" as follows:

> "Dismissal" means the denial of the current educational program to any pupil, including exclusion, expulsion, and suspension. It does not include removal from class.

Minn. Stat. 121A.41, subd. 2.

> "Expulsion" means a school board action to prohibit an enrolled pupil from further attendance for up to 12 months from the date the pupil is expelled.

Minn. Stat. 121A.41, subd. 5.

37.     Under Minnesota law, the right to an education is a constitutionally protected fundamental right, which cannot be taken away without due process.  Due to a harsh and arbitrary application of the Conservatory's harassment and discipline policy, John Doe was denied his constitutionally protected right to his education and reputation without reasonable due process.

38.     Plaintiffs seek not only money damages but also to obtain a temporary restraining order preventing Defendants from denying john Doe a non-hostile education environment, requiring the Conservatory to produce all data related to the allegations, investigation and contact with the Minnesota Department of Education, and to grant John Doe sufficient due process to clear his name.

39.     Further the Plaintiffs seek a declaration that the Conservatory arbitrarily and capriciously apply its harassment and discipline policies, violating John Doe's constitutionally protected rights.

40.     On October 12, 2017, Plaintiffs received electronic correspondence from a local ballet company informing them that "we need to discuss developments regarding the casting and the upcoming weeks."  Subsequently, the Jane Doe were informed by telephone that John Doe was being replaced by a professional dancer.  The Plaintiffs met with the ballet company director on October 15, 2017 regarding the replacement.  The Plaintiffs were informed that the ballet company

staff had heard that John Doe was sexually assaulting and grabbing girls at the Conservatory.  The ballet company director informed the Plaintiffs that the allegations were not consistent with their experience with John Doe and the Plaintiffs denied the allegation.  Because other performers had heard about the allegations and suspension, some female performers expressed discomfort with working with John Doe.  The ballet company offered to send an email supportive of John Doe and asserting that it would not be responding to the allegations.  However, the Parents were asked to attend each of John Doe's Monday practices to ensure that they were present to witness in the case of additional allegations.

41.     Female classmate at the Conservatory refused to work with John Doe to complete joint classroom assignment with him because of the allegations.  None of his peers would sit with him or acknowledge him with the exception of staring, pointing and avoiding him.

42.     On October 11, 2017, the Plaintiffs were contacted by the director of a children's theatre and asked to attend a meeting.  On October 12, 2017, Jane Doe met with the children's theatre director, while John Dow was performing for the theatre.  The director informed Jane Doe that they were aware of the allegations and that John Doe needed to be in good standing at the Conservatory to continue to perform with the theatre.  The director indicated that she wanted to speak with her legal counsel and would get back to the Plaintiffs about the impact the allegations would have on his performances.  The theatre permitted John Doe to complete the three final performances but that a decision had not yet been made for his upcoming performance, scheduled to begin practice and rehearsals in December 2017.

43.     The Conservatory has refused to respond to protect John Doe's education and reputation from an increasingly hostile education environment.  John Doe stopped attending the Conservatory on Friday October 26, 2017 and is without an education at present.

## IV.   CLAIMS

### COUNT ONE

### EDUCATION AND FOURTEENTH AMENDMENT DUE PROCESS
### 42 U.S.C. § 1983

44.     Plaintiffs reallege all paragraphs above as though fully set forth herein.

45.     The Conservatory and its employees, at all times material herein, were acting within their capacity as state actors.

46.     The actions of the Conservatory described in this Complaint deprived John Doe of his fundamental and property interests in his education without minimum due process procedures including but not limited to notice, an opportunity to be heard, and clear his name and education record.

47.     The Conservatory has inadequate and vague policies and procedures related to the suspension of students from the Conservatory that affords no reasonable due process.   The Conservatory has denied John Doe due process through effective notice, to know the testimony to be presented, to be heard on the allegations and for a name-clearing hearing to contest the allegations.   In so denying John Doe's right to minimum due process procedures for the stigmatizing allegations that led to his unilateral suspension, the Conservatory has violated John Doe's constitutionally protected interests.

48.     At all times relevant herein, the Conservatory were acting intentionally and under the color of state law, violating John Doe of his constitutionally protected liberty interest in his reputation. The Conservatory's actions deprived John Doe of his education without minimal due process protections for a student facing suspension. The actions taken by the Conservatory were applied in a punitive, overly restrictive and unavailing informal process.

49.     The actions and inactions of the Conservatory as described in this Complaint deprived John Doe of his liberty interest in his reputation for which he was stigmatized and disciplined resulting to adverse consequences socially, educationally and vocationally. The stigma associated with the allegations will adversely affect John Doe's college applications.

50.     The Conservatory had knowledge that Conservatory students had made false, defamatory and stigmatizing comments about John Doe, knew that John Doe was denied due process, and acquiesced in the allegations by immediately dismissing and suspending him from the Conservatory without adequate due process to clear his name.

51.     The Conservatory is the sole entity responsible for the implementation of the its policies and procedure, has a duty to design and implement policies and procedures that protect John Doe's due process rights.

52.     The Conservatory's actions constitute violate of John Doe's due process rights and liberty interests under the Fourteenth Amendment to the United States Constitution. As a result of these violations, John Doe is entitled to relief pursuant to 42 U.S.C. § 1983.

53.     John Doe a constitutionally protected fundamental and property interest in his education. See Constitution of the State of Minnesota, Article XIII, § 1.[3]

54.     The Conservatory acted with recklessness or indifference to John Doe's constitutional fundamental and property right in education without adequate due process.

55.     The Conservatory deprived and infringed John Doe's constitutionally protected interests without adequate due process.

---

[3] "The stability of a republican form of government depending mainly upon the intelligence of the people, it is the duty of the legislature to establish a general and uniform system of public schools. The legislature shall make such provisions by taxation or otherwise as will secure a thorough and efficient system of public schools throughout the state."

56.     As a direct and proximate cause of the action or inactions of the Conservatory, John Doe has suffered significant social, emotional, reputational and educational harm and has been damaged in an amount to be determined at trial.

57.     Plaintiffs are entitled to recovery of their costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

58.     Plaintiffs also request and demand that a preliminary order issue compelling the Conservatory to provide John Doe due process in order for John Doe to clear his name and a non-hostile education environment in which to attend.

**COUNT TWO**
**LIBERTY INTEREST IN REPUTATION AND FOURTEENTH AMENDED DUE PROCESS**
**42 U.S.C. § 1983**

59.     Plaintiffs reallege all paragraphs above as though fully set forth herein.

60.     Plaintiff John Doe has a liberty interest in his reputation within the Conservatory and his community.  He has protected interests in a non-hostile education environment and the right to pursue and participate in performances in the private arts community without damage to his reputation for the stigmatizing false allegations of sexual harassment.

61.     At all times relevant herein, the Conservatory were acting intentionally and under the color of state law, violating John Doe of his constitutionally protected liberty interest in his reputation. The actions of the Conservatory described in this Complaint deprived John Doe of his liberty interests in his reputation without adequate due process or an opportunity to clear his name.

62.     The actions and inactions of the Conservatory as described in this Complaint deprived John Doe of his liberty interest in his reputation for which he was stigmatized and disciplined resulting to adverse consequences socially, educationally and vocationally.  The stigma associated with the

allegations will adversely affect John Doe's college applications. As a result of these violations, John Doe is entitled to relief pursuant to 42 U.S.C. § 1983.

63.     The Conservatory had knowledge that Conservatory students had made false, defamatory and stigmatizing comments about John Doe, knew that John Doe was denied due process, and acquiesced in the allegations by immediately dismissing and suspending him from the Conservatory without adequate due process to clear his name.

64.     John Doe was denied his interest in participating not only in his education, as set forth herein, but was also denied roles in private community performances for which he had auditioned and received a leading role.

65.     The Conservatory acted with recklessness or indifference to John Doe's fundamental and property right in his education.

66.     John Doe's constitutionally protected property and liberty interests were taken away by the Conservatory.

67.     As a direct and proximate cause of the action or inactions of the Conservatory, John Doe has suffered significant stigma, emotional and educational harm, and has been damaged in an amount to be determined at trial.

68.     Plaintiffs are entitled to recovery of their costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

69.     Plaintiffs also request and demand that a preliminary order issue compelling the Conservatory to provide John Doe due process in order for John Doe to clear his name and a non-hostile education environment in which to attend.

**COUNT THREE**

**INVASION OF PRIVACY**
**INTRUSION ON SECLUSION**

70.     Plaintiffs reallege all paragraphs above as though fully set forth herein

71.     The Conservatory undertook discipline of John Doe for stigmatizing allegations of sexual harassment of his female peers which are highly offensive to reasonable person. Namely, by removing him immediately from his classes and school day and suspending him based on allegations without the opportunity to clear his name.

72.     The Conservatory had knowledge of and acted in utter and reckless disregard for the intrusions on his privacy and, in fact, intended to intrude upon his privacy.

73.     John Doe has suffered damage to his personal, educational and performing artist reputation as a result of the Conservatory's egregious behavior and reckless conduct in disciplining him for the stigmatizing, false allegations.

74.     As a direct and proximate cause of the Conservatory's breach of their duties, John Doe has been harmed not only in his education but in his reputation within the Conservatory and in the arts community.

75.     Plaintiffs therefore request and demand that an order issue compelling the Conservatory to provide John Doe with a name-clearing hearing.

76.     Plaintiffs further assert that they are entitled to monetary damages in an amount to be determined at trial.

## V.     RELIEF

Therefore, Plaintiff respectfully request that this Court:

1.     Exercise jurisdiction over this action;
2.     Declare that students in Minnesota have a constitutionally protected property interest in their education;
3.     Declare that students in Minnesota have a constitutionally protected liberty interest in their reputations within a public school;

4.    Declare that the Conservatory's actions deprived John Doe of his constitutionally protected interests;

5.    Declare that the Conservatory's procedures were applied in an arbitrary, and capricious manner, did not give the John Doe adequate notice, an opportunity to be heard and the hear the evidence against him prior to the deprivation of a constitutionally protected right, and the Conservatory's due process in constitutionally inadequate to protect the rights of students who are falsely accused;

6.    Declare that the Conservatory's enforcement of its disciplinary procedures violate minimal due process due to public school students in defense of their right to an education and reputation;

7.    Grant Plaintiffs' request for a Temporary Restraining Order and Preliminary Injunction preventing the Conservatory from denying due process through a name-clearing hearing and a non-hostile education environment;

8.    Provide permanent injunctive relief, preventing the Conservatory from denying John Doe due process in a name-clearing hearing and expunging the unlawful disciplinary actions from his education record;

9.    Award compensatory damages against the Conservatory in excess of $75,000.00, including costs and attorney's fees as appropriate, for all counts alleged above; and

10.    Provide such other and further relief as the Court deems just and equitable.


Respectfully submitted,

**KANE EDUCATION LAW, LLC.**


Dated:  November 2, 2017          /s/ Margaret O'Sullivan Kane
Margaret O'Sullivan Kane /ID # 220243
420 Summit Avenue
Suite 306
Saint Paul, Minnesota 55102
Tel. 651.222.8611
Fax. 651.221.2623
mkane@kaneeducationlaw.com


Attorney for Plaintiffs

**CONFIDENTIAL VERIFICATION**

I verify that I have read the foregoing Complaint, and that all of the facts and statements made therein are true and correct to the best of my knowledge, as to the attached documents they are true and correct copies, and as to those facts stated on information and belief, I also believe them to be true and correct.

Dated:_____

_____
James Doe

Subscribed and sworn to before me
this _____ day of November 2017.

_____
Notary Public