UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| John Doe, by and through his parents, James Doe and Jane Doe, | Court File No. 17-cv-5032 (DWF/FLN) |
| Plaintiffs, | **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| v. | |
| Saint Paul Conservatory for Performing Artists, | |
| Defendant. | |

## <u>INTRODUCTION</u>

Plaintiff alleges that the Saint Paul Conservatory for Performing Artists ("SPCPA") denied him due process when it suspended him from school for three days. Plaintiff's assertions as to what the Due Process Clause requires in routine school discipline matters of this nature ignore well-established law. The allegations in Plaintiff's Complaint fail to state a claim for violation of his due process rights. The same is true of Plaintiff's State law tort claim. Plaintiff has failed to allege any conduct on the part of SPCPA that could give rise to an actionable intrusion upon his seclusion. For the reasons set forth herein, SPCPA respectfully requests that Plaintiff's Complaint be dismissed in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

## STATEMENT OF RELEVANT FACTS FROM PLAINTIFF'S COMPLAINT[1]

Plaintiff commenced this action on November 6, 2017.  ECF No. 1 ("Complaint").

Plaintiff's Complaint includes nine (9) exhibits.  *See* ECF Nos. 1-2 to 1-9 ("Plaintiff's

Exhibits").  These exhibits are specifically referenced in the Complaint, and are attached

to the pleading that was filed electronically with the Court.  *See id.*  Plaintiff's Exhibits

were also attached to the November 2, 2017, Declaration of Margaret O'Sullivan Kane.

*See* ECF Nos. 2 & 8.  That Declaration expressly states that Plaintiff's Exhibits are

"appending to the Complaint…" *Id.*, ¶ 2.

   A.     *SPCPA's Disciplinary Policies.*

SPCPA is a Minnesota public charter school, with a focus on academics and

performing arts.  Complaint, ¶¶ 7-8.  Consistent with applicable State and federal anti-

discrimination laws, SPCPA "prohibits any form of harassment or violence on the basis

of" membership in various protected classes, including sex.  Plaintiff's Exhibit 3 at p. 25;

*see also* Complaint, ¶ 30 (referencing Plaintiff's Exhibit 3).  As part of its student

discipline policy, SPCPA also expressly prohibits students from:

> Participating in or conspiring with others to engage in acts that injure,
> degrade, intimidate or disgrace other individuals, including indecent
> exposure, displaying pornography and words or actions that negatively
> impact an individual or group of individuals based on their racial, cultural,
> or religious background, their sex, their sexual orientation, and any
> disabilities, creed, national origin, marital status, status with regard to
> public assistance or age.

---

[1] At this stage of the proceeding, the Court must accept the facts alleged by Plaintiff as true.  SPCPA, however, does not admit to any factual allegation, waive its right to contest any of Plaintiff's factual allegations, or waive any arguments or defenses which may be asserted at a future time.

*Id.* at p. 29 (Defining prohibited "Harassment (Including Sexual)" that may result in school discipline); *see also* Complaint, ¶ 30 (quoting definition of "harassment" in Plaintiff's Exhibit 3).

> B.    *Plaintiff Received a Three-Day Suspension from School for Violating SPCPA's Harassment Policy.*

At all times relevant to this Motion, Plaintiff was a fifteen-year old student enrolled at SPCPA.  Complaint, ¶¶ 4, 6.  On or before October 9, 2017, SPCPA administrator Ilah Raleigh ("Dean Raleigh") received reports from three female students about Plaintiff's behavior toward them.  *See* Plaintiff's Exhibit 7.  On October 9, 2017, Dean Raleigh called Plaintiff into her office and interviewed him about those allegations.  *Id.*; *see also* Complaint, ¶ 12.  Dean Raleigh took notes summarizing her October 9, 2017, meeting with Plaintiff.  *See* Plaintiff's Exhibit 7; *see also* Complaint, ¶ 24 (referencing Plaintiff's Exhibit 7).

At the start of her meeting with Plaintiff, Dean Raleigh "verbally recited the allegations against him," including "shar[ing] quotes from the three reports."  Complaint, ¶ 12, Plaintiff's Exhibit 7.  During this meeting, Plaintiff became upset, interrupted Dean Raleigh, and initially asserted that the allegations against him were false.  *See* Plaintiff's Exhibit 7.  After Dean Raleigh "shared the rest of the 3 reports," however, Plaintiff admitted "that he had had contact with several girls."  *Id.*

After his interview with Dean Raleigh, Plaintiff left the office to use the bathroom and "ran into his English Teacher."  Complaint, ¶ 13.  When talking with his English teacher, Plaintiff "said he knew he had made other students feel uncomfortable and that

3

he was not questioning the punishment." Plaintiff's Exhibit 1. Plaintiff said that only "some of what he was accused of wasn't true." *Id.*

Also on October 9, 2017, Dean Raleigh called Plaintiff's parents to inform them that Plaintiff was being disciplined for sexual harassment and that they needed to come pick Plaintiff up from school. Complaint, ¶ 15. Plaintiff's parents came to the school and met with Dean Raleigh and Principal/Academic Director Ellen Delaney ("Principal Delaney"). *Id.* Plaintiff attended part of that meeting as well. Complaint, ¶ 17. During that meeting, Dean Raleigh "verbally described the allegations [to Plaintiff's parents], as she had with John Doe." *Id.* at ¶ 15. Consistent with her earlier conversation with Plaintiff, Dean Raleigh informed Plaintiff's parents that he had "admitted to" the conduct in question. *Id.* at ¶ 17. At the end of the meeting, Principal Delaney informed Plaintiff's parents that Plaintiff was going to be suspended for three (3) days. *Id.* at ¶ 15.

Following the meeting between SPCPA administrators and Plaintiff's parents, SPCPA administration mailed a written Notice of Suspension. *See* Plaintiff's Exhibit 8 (referenced in Complaint, ¶ 29). Plaintiff's parents received the Notice of Suspension on October 12, 2017. Complaint, ¶ 29. The Notice of Suspension informed Plaintiff and his parents that Plaintiff was suspended for three days for harassment. *See* Plaintiff's Exhibit 8. The Notice of Suspension further stated:

> **Briefly, the facts that have been determined are:**
> Three students have reported to Ms. Raleigh a pattern of harassment that [Plaintiff] has engaged in including inappropriate touch: sitting too close, touching without permission, grabbing a student's leg near the crotch, licking a student's hand, grabbing a student from behind and groping. Each student has communicated verbally and non-verbally to [Plaintiff] that they want him to stop. In each case, he escalated the behaviors.

4

*Id.*; *see also* Complaint, ¶ 29 (quoting Plaintiff's Exhibit 8).  The Notice of Suspension also set forth a "plan of readmission," and stated that alternative educational services in the form of homework would be provided to Plaintiff during the term of the suspension. *See* Plaintiff's Exhibit 8.

As stated in the Notice of Suspension, Plaintiff was "able to return to class as usual on Thursday, October 12, 2017." Plaintiff's Exhibit 8.  Nevertheless, Plaintiff's parents kept him home from school until October 16, 2017.  Complaint, ¶¶ 24, 27.  On October 16, 2017, SPCPA met with Plaintiff and his parents to discuss his readmission. Complaint, ¶¶ 24-26; *see also* Plaintiff's Exhibit 6 (stating that "On October 16, 2017 we are meeting following the suspension to discuss any concerns prior to reinstatement to school").  Plaintiff "was permitted to join his next class at the end of the meeting" on October 16, 2017.  Complaint, ¶ 26.

## PLAINTIFF'S CLAIMS

*1.    Count One: Education and Fourteenth Amendment Due Process.*

In Count One of the Complaint, Plaintiff alleges that SPCPA deprived him of his "fundamental and property interests in his education without minimum due process procedures, including but not limited to notice, an opportunity to be heard, and clear his name and education record."  Complaint, ¶ 46.  Plaintiff claims that SPCPA has "inadequate and vague policies and procedures related to the suspension of students from [SPCPA] that affords no reasonable due process."  *Id.* at ¶ 47.  Plaintiff claims that he was entitled to "effective notice, to know the testimony to be presented, to be heard on the allegations and for a name-clearing hearing to contest the allegations."  *Id.*

5

2.   *Count Two: Liberty Interest in Reputation and Fourteenth Amendment Due Process.*

In Count Two of the Complaint, Plaintiff claims that SPCPA violated his constitutionally-protected liberty interest in his reputation, "for which he was stigmatized and disciplined resulting to adverse consequences socially, educationally and vocationally." *Id.* at ¶¶ 61-62.  Once again, the basis of this claim is Plaintiff's assertion that SPCPA had knowledge that other students "made false, defamatory and stigmatizing comments about [Plaintiff], knew that [Plaintiff] was denied due process, and acquiesced in the allegations by immediately dismissing and suspending him from [SPCPA] without adequate due process to clear his name." *Id.* at ¶ 63.

3.   *Count Three: /Intrusion Upon Seclusion*

In Count Three of the Complaint, Plaintiff asserts the Minnesota state law tort of intrusion upon seclusion, a specific type of invasion of privacy claim.  Plaintiff claims that SPCPA disciplined him "for stigmatizing allegations of sexual harassment of his female peers which are highly offensive to a reasonable person." *Id.* at ¶ 71.  Plaintiff claims that SPCPA "had knowledge of and acted in utter and reckless disregard for the intrusions on his privacy and, in fact, intended to intrude upon his privacy." *Id.* at ¶ 72.

## APPLICABLE LEGAL STANDARDS

The standards for a motion to dismiss for failure to state a claim are well-settled. A civil complaint must be dismissed if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. Proc. 12(b)(6).  In order to survive such a motion to dismiss, "a complaint must contain specific factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'"  *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th

Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A claim is not plausible

unless the pleading sets forth facts that permit the court to draw a reasonable inference

that the defendant is liable.  *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)).  "[A] reasonable inference is one which may be drawn from the

evidence without resort to speculation."  *Kinserlow v. CMI Corp.*, 217 F.3d 1021, 1026

(8th Cir. 2000).

       In considering a motion to dismiss, the Court looks to the facts alleged in the

Complaint and construes those facts, as well as reasonable inferences that can be drawn

from them, in favor of the nonmoving party.  *Maki v. Allete, Inc.*, 383 F.3d 740, 742 (8th

Cir. 2004); *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).  Pursuant to

Federal Rule of Civil Procedure 10(c), statements may be adopted by reference into

pleadings, and documents that are made exhibits to a pleading are "part of the pleading

for all purposes."  Fed. R. Civ. P. 10(c).  Accordingly, "materials attached to the

complaint as exhibits may be considered in construing the sufficiency of the complaint."

*Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011); *Morton v. Becker*, 783 F.3d 185,

187 (8th Cir. 1986).  "[W]here an exhibit contradicts an assertion made in the complaint

and eliminates any possible claim for relief, dismissal is appropriate."  *Sheppard v. Texas

Dept. of Transp.*, 158 F.R.D. 592, 595 (E.D. Tex. 1994).

       In other words, a complaint must raise a right to relief above mere speculation.

*Twombly*, 550 U.S. at 555.  While courts consider the facts pleaded as true when

considering a motion to dismiss, a "pleading that offers 'labels and conclusions' or 'a

formulaic recitation of the elements of a cause of action will not do.'"  *Id.*  The complaint

must do more than merely leave open "the possibility that a plaintiff might later establish

some set of undisclosed facts to support recovery."  *Twombly*, 550 U.S. at 561.  Rather, a

plaintiff must "nudge their claims across the line from conceivable to plausible."  *Id*. at

570.  A claim is only plausible when the plaintiff pleads "factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).  Where a complaint

pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the

line between possibility and plausibility of 'entitlement to relief.'"  *Id*.

## ARGUMENT[2]

Plaintiff's due process claims are directly contrary to decades of binding precedent

regarding the amount of process required in student discipline cases involving

suspensions of less than ten days.  Plaintiff's intrusion upon seclusion claim is likewise

contrary to law.  Plaintiff has failed to state a claim upon which relief may be granted.

## I.   PLAINTIFF'S COMPLAINT FAILS TO STATE A DUE PROCESS CLAIM PURSUANT TO 42 U.S.C. § 1983.

Plaintiff asserts that SCPCA has deprived him of due process, and he seeks relief

pursuant to 42 U.S.C. § 1983 ("§ 1983").  In Count One, Plaintiff asserts a violation of

his "education and fourteenth amendment due process."  Complaint, ¶¶ 44-58.  In Count

Two, Plaintiff asserts a violation of his "liberty interest in reputation and fourteenth

---

[2] SPCPA previously submitted a Memorandum of Law opposing Plaintiff's Motion for injunctive relief.  *See* ECF No. 11.  SPCPA incorporates all legal arguments regarding the merits of Plaintiff's claims into this Memorandum by reference.

amendment due process." *Id.* at ¶¶ 59-69. Both of these claims are premised on the assertion that SPCPA failed to provide Plaintiff "minimum due process procedures," including notice and an opportunity to be heard and clear his name and education record. Complaint, ¶¶ 46, 61. Plaintiff's conclusory allegations are directly contrary to the facts asserted in his complaint and the exhibits he attached thereto. Those facts and exhibits demonstrate that Plaintiff received all the process to which he was entitled. Therefore, Plaintiff has failed to state a claim under § 1983.

A.    *Plaintiff Has Not Stated a Viable Procedural Due Process Claim.*

"[D]ue process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Goss v. Lopez*, 419 U.S. 565, 581 (1975). In *Goss*, the U.S. Supreme Court held that an "informal give-and-take between student and disciplinarian" is sufficient due process for a suspension of less than 10 days. 491 U.S. at 584. The *Goss* Court further held:

> There need be no delay between the time "notice" is given and the time of the hearing. In the great majority of cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred. We hold only that, in being given an opportunity to explain his version of the facts at this discussion, the student first be told what he is accused of doing and what the basis of the accusation is.

*Id.* at 582. The *Goss* Court expressly held that, "in connection with short suspensions," schools are not required to "afford the student the opportunity to secure counsel, to

confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident." *Id.* at 583.

The *Goss* decision creates a low threshold for suspensions of 10 days or less, and has been described by courts in this District as "minimal," "rudimentary," and "not extensive" due process. *Achman v. Chisago Lakes Indep. Sch. Dist. No. 2144*, 45 F.Supp.2d 664, 671 (D. Minn. 1999) ("minimal" due process); *Bystrom v. Fridley High School*, 686 F.Supp. 1387, 1393 (D.Minn. 1987) ("rudimentary" due process) *aff'd*, 855 F.2d 855 (8th Cir. 1988); *Peterson v. Indep. Sch. Dist. No. 811*, 999 F.Supp. 665, 672-73 (D.Minn. 1998) ("the procedural prerequisites to a short suspension are not extensive"). Indeed, this Court has held that a short, ten-minute meeting during which the principal asked the student "what he was thinking" satisfies due process under *Goss*. *Riehm v. Engelking*, 2007 WL 37799, *7 (D. Minn., Jan 4, 2007) (unpublished).

As stated in *Bystrom*:

> The Supreme Court's decision in *Goss* guarantees only an "informal give-and-take between student and disciplinarian. A three day suspension from school does not rise to the level of a penal sanction calling for the full panoply of procedural due process protections applicable to a criminal prosecution. More generally, due process principles have never assured a successful defense. Instead, a student facing a suspension of less than ten days is entitled only to state his or her view of the events precipitating the suspension for the purpose of avoiding "unfair or mistaken findings of misconduct and arbitrary exclusion from school."

686 F.Supp. at 1394 (citations and quotations omitted).

There can be no question that SPCPA satisfied these requirements. For instance, Plaintiff asserts that Dean Raleigh interviewed him prior to his suspension. Complaint, ¶ 12. As evidenced by her notes, Dean Raleigh informed Plaintiff about the allegations and

read portions of those allegations to him.  Plaintiff's Exhibit 7; *see also* Complaint, ¶ 20.

In other words, Plaintiff received the "oral notice" and "explanation of the evidence"

SPCPA possessed, as required by the Due Process Clause.  *Goss*, 419 U.S. at 581.

During that interview, Dean Raleigh asked Plaintiff about the allegations and allowed

him to respond to those questions.  Plaintiff's Exhibit 7; *see also* Complaint, ¶ 12.  Thus,

to the extent that he denied part of the allegations, Dean Raleigh gave Plaintiff the

"opportunity to present his side of the story."  *Goss*, 419 U.S. at 581.  This type of

conversation with a school administrator is precisely the type of "informal give-and-take"

contemplated by the *Goss* Court.  It is also significantly more process than this Court

upheld in the *Riehm* case.  2007 WL 37799 at *7.  As Plaintiff was able to "state [his]

view of the events precipitating the suspension" and was only suspended for three days,

the process he received satisfied the constitutional requirements.  *See, e.g., Bystrom*, 585

F.Supp. at 1394.

     Plaintiff's contention that he should have been told the "testimony to be

presented" and for a "name-clearing hearing" prior to the suspension are directly contrary

to *Goss* and the cases applying it.  *See, e.g., Bystrom*, 585 F.Supp. at 1394.  Plaintiff

undeniably received a verbal notice of the allegations against him and an opportunity to

be heard before school administrators.  Indeed, SPCPA went beyond the minimal process

upheld in *Riehm and Bystrom*.  Specifically, Plaintiff and his parents attended a second

administrative conference with both Dean Raleigh and Principal Delaney.  Complaint, ¶¶

24 - 25.  If a ten-minute verbal conversation with a principal satisfies due process, two

longer conversations, with separate administrators and Plaintiff's parents present certainly does so as well.

Plaintiff further asserts that there has been a violation of his liberty interest in his reputation. This claim also fails as a matter of law. First, to the extent that this claim is premised on the alleged lack of due process, it fails for the same reason as Count 1; namely, that SPCPA provided him all the process to which he was entitled.

Moreover, it is well-established that damage to reputation alone is not sufficient to invoke the procedural protections of the due process clause. *Gunderson v. Hvass*, 339 F.3d 639, 644 (8th Cir. 2003) (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976)). Instead, the "loss of reputation must be coupled with some other tangible element to rise to the level of a protectible property interest." *Id.* This is referred to as the "stigma plus" test. Here, Plaintiff has not identified any tangible protectible property interest that has been impacted, and therefore he has failed to satisfy the "plus" part of the "stigma plus" test.

While Plaintiff alleges that the allegations by other students were stigmatizing, his claims relate solely to his alleged reputational harm. In other words, Plaintiff has failed to identify any element that satisfies the "plus" element of this claim. The same is true of Plaintiff's allegations regarding his role as a performer in outside theatrical productions that are unrelated to SPCPA. Plaintiff has not demonstrated a protected right, whether contractual or otherwise, to any role in such a production. His speculation that he would have been allowed to perform in any role simply does not meet the requirements of the "stigma plus" claim.

Even more significantly, Plaintiff's stigma plus claim does not appear to be based upon any conduct by SPCPA at all.  Rather, Plaintiff appears to base this claim upon social media posts by other SPCPA students, and alleged damage to his reputation in the school and in the local performing artist community as a result of that social media activity.  Complaint, ¶¶ 21, 28, 40, 42.  "[T]o succeed on his claim that his suspension deprived him of his liberty interest in his reputation, [Plaintiff] will have to show that [SPCPA] caused damage through a communication that *it* made about that suspension; [SPCPA] cannot be held responsible for the statements of others, such as students and their parents."  *J.K. v. Minneapolis Public Schools*, 849 F.Supp.2d 865, 879 (D. Minn. 2011) (emphasis in original).  Plaintiff does not allege, much less provide any factual support for an allegation, that SPCPA disclosed any information about the suspension.  Instead, it appears that his claims are based on other students' discussions of the underlying allegations against him.  Complaint, ¶ 21, Plaintiff's Exhibits 4-5.  SPCPA "cannot be held responsible for the statements of" those students.  *J.K.*, 849 F.Supp.2d at 829.

  B. *Plaintiff Has Not Stated a Viable Substantive Due Process Claim Against SPCPA.*

While it does not appear that Plaintiff is asserting a substantive due process claim, any such claim also fails as a matter of law.  In order to establish a violation of his substantive due process rights, Plaintiff would have to show arbitrary and capricious conduct on the part of SPCPA.  *Condor v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990).  "Conduct is arbitrary and capricious only if there is no rational basis for a

decision or a decision is motivated by bad faith or ill-will." *Peterson*, 999 F.Supp. at 673

(citing *Condor*, 912 F.3d at 220).

As the Eighth Circuit has recognized: "The theory of substantive due process is

properly reserved for truly egregious and extraordinary cases." *Myers v. Scott County*,

868 F.2d 1017, 1017 (8th Cir. 1989).  "[T]here is no violation of substantive due process

unless misconduct of government officials that violates a fundamental right is 'so

egregious, so outrageous, that it may fairly be said to shock the contemporary

conscience.'" *Keefe v. Adams*, 840 F.3d 523, 533 (8th Cir. 2016) (quoting *County of*

*Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)).

The allegations in Plaintiff's Complaint simply do not rise to the level required for

a substantive due process claim.  Courts within this District have recognized that the

Eighth Circuit's "threshold" for substantive due process claims in relation to student

discipline is "extremely high."  *See J.M. v. Hopkins School Dist.*, 2003 WL 41639, *6 (D.

Minn., Jan 3. 2003) (unpublished).  For example, alleged verbal harassment of a student

by a teacher in front of classmates, including calling the student "retarded" and striking

the student in the case was not conscience shocking as a matter of law.  *Costello v.*

*Mitchell Pub. Sch. Dist. 79*, 266 F.3d 916 (8th Cir. 2001).  The same is true for

allegations that a teacher dragged a student across the floor and banged the student's head

against a pole.  *See London v. Directors of Dewitt Pub. Sch.*, 194 F.3d 873 (8th Cir.

1999).  Here, Plaintiff's allegation that SPCPA suspended him from school for three days

following allegations of sexual harassment pale in comparison to these examples, and

clearly do not state a viable substantive due process claim.

C.      *Plaintiff Has Not Stated a Viable* Monell *Claim Against SPCPA.*

Plaintiff has not named any individual SPCPA employee as a Defendant in this

case.  *See generally* Complaint.  Rather, Plaintiff's claims are asserted solely against

SPCPA as an entity.  *Id.*  This is significant, as it is well-established that governmental

entities cannot be liable under § 1983 on a theory of *respondeat superior*.  *See Monell v.*

*Dept. of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).  Rather, municipal liability under §

1983 exists only if the execution of a policy or custom caused the constitutional violation.

*Id.*

In order to establish a *Monell* claim, Plaintiff must establish the existence of some

"official custom or policy that caused a deprivation of a federally protected right."

*Achman*, 45 F.Supp.2d at 671 (citing *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690-91

(1978)).  Indeed, Plaintiff must prove that the custom or policy was the "moving force"

behind the violation of his rights.  *Monell*, 436 U.S. at 694.  This would require Plaintiff

to demonstrate: (1) the existence of a continuing, persistent, widespread pattern of

unconstitutional misconduct by the municipal entity's employees; (2) deliberate

indifference to or authorization of unconstitutional conduct by municipal entity's

policymaking officials after notice to the officials of the purported misconduct; and (3)

that Plaintiff was injured by acts pursuant to this policy, which was the moving force

behind the violation.  *Mettler v. Whitledge,* 165 F.3d 1197, 1204 (8th Cir. 1999).

For three reasons, Plaintiff's Complaint does not state a plausible *Monell* claim,

and accordingly Count 1 and Count 2 must be dismissed.  First, because there is no

underlying violation of Plaintiff's constitutional rights, there can be no *Monell* claim

against SCPCA. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Sanders v. City of Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007). As set forth above, SPCPA clearly afforded Plaintiff due process in relation to his three-day suspension.

Second, Plaintiff has not put forth any allegations that would support a *Monell* claim. Plaintiff alleges that SPCPA "has inadequate and vague policies and procedures related to the suspension of students from [SPCPA] that affords no reasonable due process." Complaint, ¶ 47. Plaintiff further alleges: "Due to a harsh and arbitrary application of [SPCPA]'s harassment and discipline policy, [Plaintiff] was denied his constitutionally protected right to his education and reputation without reasonable due process." *Id.* at ¶ 37. Plaintiff does not, however, explain how any SPCPA policy has deprived him of any constitutional right, other than asserting that "a student is permitted a hearing only when the consequences result in exclusion or expulsion," and that SPCPA "does not provide a hearing for a dismissal or suspension." *Id.* at ¶ 36. Such vague allegations simply do not satisfy the pleading requirements of Rule 12, nor do they even rise to the level of a pleading that merely "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action," which is also not sufficient under Rule 12. *Twombly*, 550 U.S. at 555.

Third, Plaintiff's allegations simply do not support a viable *Monell* claim. The only allegations regarding any allegedly unconstitutional policies or customs of SPCPA pertain to whether a student is afforded a formal hearing in regard to disciplinary action. *See* Complaint, ¶¶ 36-37, 47. Here, it is undisputed that Plaintiff was only suspended for three days. The U.S. Supreme Court has clearly and unequivocally held that due process

16

does not require a formal hearing for a suspension of less than ten days.  *Goss*, 419 U.S. at 581.  As such, there is no factual or legal basis for Plaintiff to base a *Monell* claim upon the fact that the SPCPA discipline policy does not require a formal hearing for a three-day suspension.

There is also no basis for Plaintiff to claim that SPCPA's harassment and discipline policies are facially unconstitutional as vague.  The Eighth Circuit has long held that schools have the inherent authority to maintain order and to discipline students.  *Esteban v. Central Missouri State College*, 415 F.2d 1077, 1088 (8th Cir. 1969).  SPCPA also has "latitude and discretion in its formulation of rules and regulations of general standards of conduct."  *Id.*  As the U.S. Supreme Court has held, "[g]iven [a] school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, the school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions."  *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 686 (1986).  All that due process requires is that "the laws which regulate persons or entities must give fair notice of conduct that is forbidden or required."  *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).

The SPCPA policy in question clearly outlines the types of prohibited "harassment."  Plaintiff's Ex. 3 at 29.  Inappropriate touching of female students is, without a doubt, injurious or degrading conduct based on sex.  *See, e.g., Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629 (1999).  Thus, the SPCPA policies meet the requirements of due process.

D.      *Alternatively, Qualified Immunity Bars Any Due Process Claim.*

As demonstrated herein, Plaintiff has not stated a viable constitutional claim under the facts of this case.  However, if the Court finds that Plaintiff was entitled to some form of due process beyond what the Supreme Court held to be required in *Goss*, any conduct by SPCPA employees would be entitled to qualified immunity.

The test for qualified immunity has two parts: (1) "whether there is sufficient evidence the [Defendant] violated a constitutional right," and (2) "whether the constitutional right . . . was so 'clearly established' at the time of the alleged violation that a reasonable [person] would have known that his conduct was unlawful."  *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1211 (8th Cir. 2013) (internal quotations omitted).  Whether a right is "clearly established" is a question of law for the Court to decide.  *Id.*

To date, in cases involving suspensions of ten days or less, there is no clearly established constitutional right to due process beyond what the Supreme Court set forth in *Goss*.  As such, even if Plaintiff had named any SPCPA administrators as Defendants in this case, they would be entitled to qualified immunity.

## III.   PLAINTIFF'S COMPLAINT FAILS TO STATE A STATE LAW INVASION OF PRIVACY CLAIM.

Plaintiff's third claim alleges that SPCPA committed the Minnesota state law tort of intrusion upon seclusion, a specific type of invasion of privacy.  Complaint, ¶¶ 70-76.  While it is not entirely clear from the face of Plaintiff's Complaint, Plaintiff appears to be alleging that SPCPA intruded upon his privacy rights by disciplining him following

18

receipt of complaints and allegations of sexual harassment by Plaintiff that were made by multiple SPCPA students.  Such a claim fails as a matter of law.

Under Minnesota law, an intrusion upon seclusion occurs when a person "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another of his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person. *Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231, 233 (Minn. 1998) (adopting Restatement (2d) of Torts § 652B).  In other words, the tort of intrusion upon seclusion has the following three elements: (1) an intrusion, (2) that is highly offensive, and (3) into some matter in which a person has a legitimate expectation of privacy. *Swarthout v. Mut. Serv. Life Ins. Co.*, 632 N.W.2d 741, 744 (Minn. App. 2001).  There can be no liability unless the interference with seclusion is substantial.  *Id.* at 745.

Plaintiff's intrusion upon seclusion claim is baseless.  SPCPA only asked Plaintiff about his interactions with other SPCPA students.  *See* Plaintiff's Exhibit 7; *see also* Complaint, ¶ 12.  Plaintiff has no legitimate expectation of privacy regarding allegations that he engaged in improper conduct towards other students, conduct which reportedly occurred at school.  *See, e.g., Bd. of Educ. Of I.S.D. No. 92 of Pottawatomie County v. Earls*, 536 U.S. 822, 830 (2002) (holding that a "student's privacy interest is limited in a public school environment where the State is responsible for maintaining discipline, health, and safety").  To the contrary, upon receiving the complaints, SPCPA had an obligation to respond.  *See, e.g., Davis*, 526 U.S. 629 (1999) (applying deliberate indifference standard to claims of student-to-student sexual harassment under Title IX).  Moreover, an alleged "intrusion" must be "highly offensive."  *See Lake*, 582 N.W.2d

231, 233.  Asking a student to respond to allegations against his behavior at school is not

"highly offensive."  Were that the case, no school administrator could ever question a

student about his or her misconduct without liability.

Finally, to the extent Plaintiff is trying to claim that the alleged disclosure of facts

related to his discipline violated his right to privacy, such a claim is not cognizable.  A

claim for wrongful disclosure is labeled as a claim for "false light publication."  *Lake*,

582 N.W.2d at 233.  Minnesota does not recognize false light publication as an actionable

tort.  *Id.* at 235.  Plaintiff's Complaint simply does not state a valid claim of invasion of

privacy, and therefore Count 3 must be dismissed.

## IV.    PLAINTIFF'S COMPLAINT DOES NOT STATE ANY OTHER VALID STATE LAW CLAIMS.

While not specifically pleaded as a separate count, Plaintiff appears to allege that

SPCPA did not follow the requirements of the Minnesota Pupil Fair Dismissal Act

("PFDA").  *See* Complaint, ¶ 36-37.  The PFDA, however, does not create a private cause

of action, and therefore cannot support any claim for which relief may be granted.

*Achman*, 45 F.Supp.2d at 670.

Regardless of the legal viability of such a claim, Plaintiff's Complaint and the

exhibits appended thereto actually establish that SPCPA followed the requirements of the

PFDA.  Under Minnesota state law, a public school must follow three procedural steps to

suspend a student.  First, there must be an "informal administrative conference" prior to

suspension.  Minn. Stat. § 121A.46, subd. 1.  Second, during this informal conference, a

school administrator "shall notify the pupil of the grounds for the suspension, provide an

explanation of the evidence the authorities have, and the pupil may present the pupil's version of the facts.  Minn. Stat. § 121A.46, subd. 2.  Third and finally, the school must provide a written notice "containing the grounds for suspension, a brief statement of the facts, a description of the testimony, a readmission plan, and a copy of [the PDFA]" within 48 hours of the informal administrative conference.  Minn. Stat. § 121A.46, subd. 3.  Plaintiff's Complaint establishes that SPCPA followed these procedures.

Plaintiff admits that an informal administrative conference between Dean Raleigh and Plaintiff took place on October 9, 2017.  Plaintiff's Exhibit 7; *see also* Complaint, ¶ 12.  During this conference, Dean Raleigh notified Plaintiff of the grounds for the suspension; namely the allegations by three students.  *Id.*  Dean Raleigh also explained the evidence supporting the allegations, going so far as to read significant portions of the three students' statements.  *Id.*  Plaintiff was provided, and in fact availed himself, of an opportunity to present his version of the facts.  *Id.*

Plaintiff received a second informal administrative conference, with his parents in attendance, on October 9, 2017,.  Complaint, ¶¶ 15, 17.  During that meeting, Dean Raleigh and Principal Delaney again explained the allegations and the evidence in support of those allegations.  *Id.*  Plaintiff was not officially suspended until after the second administrative conference.  *Id.*

Finally, Plaintiff and his parents were provided a written notice of suspension.  Complaint, ¶ 29; Plaintiff's Exhibit 8.  This document, which was signed by both Dean Raleigh and Principal Delaney, sets forth the grounds for the suspension, a brief

statement of the facts and a description of the allegations made against Plaintiff, as well as a readmission plan.  *Id.*

There is simply no basis to conclude that Plaintiff was denied any due process, or that the PFDA was not followed.  Even if Plaintiff could establish some minor, technical noncompliance on the part of SPCPA, the PDFA expressly provides: "A violation of the technical provisions of the [PFDA], made in good faith, is not a defense to a disciplinary procedure under the act unless the pupil can demonstrate actual prejudice as a result of the violation."  Minn. Stat. § 121A.48.  Accordingly, Plaintiff's allegations regarding the PFDA are not only irrelevant—as the PDFA does not create a cause of action—they are also facially without merit.

## **CONCLUSION**

Plaintiff's Complaint fails to state factually and legally cognizable claims against SPCPA.  In reality, Plaintiff's Complaint and the exhibits attached thereto establish that SPCPA met its obligations under both federal and state law.  Accordingly, the Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## [SIGNATURE BLOCK ON FOLLOWING PAGE]

Respectfully Submitted,

**RATWIK, ROSZAK & MALONEY, P.A.**

Dated: November 28, 2017          By: s/Christian R. Shafer
                                       Christian R. Shafer (#387947)
                                       Timothy A. Sullivan (#391526)
                                       Ratwik, Roszak & Maloney, P.A.
                                       730 Second Avenue South, Suite 300
                                       Minneapolis, MN  55402
                                       Phone: (612) 339-0060
                                       Fax: (612) 339-0038
                                       crs@ratwiklaw.com
                                       tas@ratwiklaw.com

                                       *Attorneys for Defendant Saint Paul*
                                       *Conservatory for Performing Artists*

RRM:     276630