UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In the Matter of John Doe, by and through his parents, James Doe and Jane Doe,<br><br>Plaintiff,<br><br>v.<br><br>Saint Paul Conservatory for Performing Artists,<br><br>Defendant. | Civil No. 17-5032 (DWF/FLN)<br><br><br><br>**MEMORANDUM OPINION AND ORDER** |

_____

Margaret O'Sullivan Kane, Esq., Kane Education Law, LLC, counsel for Plaintiff.

Christian R. Shafer, Esq., and Timothy A. Sullivan, Esq., Ratwik, Roszak & Maloney, PA, counsel for Defendant.

_____

## INTRODUCTION

This matter is before the Court on a Motion for Temporary Restraining Order, Preliminary Injunction, and Waiver of Security, brought by Plaintiff John Doe, by and through his parents, James Doe and Jane Doe. (Doc. No. 5.)

## BACKGROUND

Plaintiff John Doe was a student enrolled at Defendant Saint Paul Conservatory for Performing Arts ("SPCPA"). SPCPA is a public charter school organized under Minnesota Statutes, Chapter 124E. (Doc. No. 12 ("Jacobs Aff.") ¶ 2.) SPCPA is subject to state and federal anti-discrimination laws prohibiting, among other things, sexual

harassment.  *See* 20 U.S.C. § 1681 (Title IX of the Education Amendments Act of 1972); Minn. Stat. § 363A.13 (Minnesota Human Rights Act).  Through its own policies, SPCPA prohibits harassment or violence on the basis of sex.  (Jacobs Aff. ¶ 19, Ex. B at 28 (2017-18 Student Handbook); Doc. No. 8 ("Kane Decl.") ¶ 2, Ex. 3 at 25 (2016-17 Student Handbook.)  SPCPA policy imposes a 5-day suspension for a first offense and expulsion for a second offense with respect to the following behavior:

> Participating in or conspiring with others to engage in acts that injure, degrade, intimidate or disgrace other individuals, including indecent exposure, displaying pornography and words or actions that negatively impact and [sic] individual or group based on their racial, cultural or religious background, their sex, their sexual orientation, any disabilities, creed, national origin, marital status, status with regard to public assistance or age.

(2017-18 Student Handbook at 28.)  SPCPA's policies are included in its Student and Parent Handbook, which is distributed to students electronically and is available on SPCPA's website.

On October 9, 2017, three female students informed Dean Ilah Raleigh that Plaintiff had engaged in behavior that included:  "[I]nappropriate touch:  sitting too close, touching without permission, grabbing a student's leg near the crotch, licking a student's hand, grabbing a student from behind and groping."  (Kane Decl. ¶ 2, Ex. 8 (Notice of Suspension); Doc. No. 13 ("Raleigh Aff.") ¶ 3.)  According to the Notice of Suspension, the students verbally and non-verbally indicated that they wanted Plaintiff to stop, and in each case, Plaintiff allegedly escalated the harassing behavior.  (Notice of Suspension.)

Dean Raleigh interviewed Plaintiff in her office.  (Kane Decl. ¶ 2, Ex. 7; Raleigh Aff. ¶ 3.)  Dean Raleigh shared the details of the students' statements regarding Plaintiff's alleged inappropriate behavior.  (Kane Decl. ¶ 2, Ex. 7; Raleigh Aff. ¶¶ 4, 11.)  Specifically, Dean Raleigh read portions of the students' written reports and asked for Plaintiffs' response.  (Kane Decl. ¶ 2, Ex. 7; Raleigh Aff. ¶¶ 4, 11.)  Dean Raleigh noted that Plaintiff indicated that he was not aware that his behavior had bothered the students and that he thought he and the other students had been flirting.  (Kane Decl. ¶ 2, Ex. 7.)  According to Dean Raleigh, Plaintiff admitted to "touching multiple female students" but denied other aspects of the students' allegations.  (Kane Decl. ¶ 2, Ex. 7; Raleigh Aff. ¶¶ 4, 11.)  During the interview, Dean Raleigh informed Plaintiff that he might be suspended.  (Raleigh Aff. ¶ 4.)  Dean Raleigh also informed Plaintiff's parents about the allegations, who then indicated that they wanted to come to the school to meet.  (*Id.* ¶ 6.)

While Plaintiff was waiting for his parents to arrive, he spoke with his English teacher, Emily Johnson.  (Plaintiff Aff. ¶ 7.)  According to Johnson, Plaintiff stated that some students had accused him of sexual harassment and that he had been suspended.  (Plaintiff Aff. ¶ 7; Doc. No. 15 ("Johnson Aff.") ¶3.)  Johnson asserts that Plaintiff denied some of the allegations, but admitted that some allegations were true and that he engaged in conduct that "made other students feel uncomfortable."  (Johnson Aff. ¶¶ 3-4.)

That same morning, Dean Raleigh met with Principal Ellen Delaney.  (Raleigh Aff. ¶ 7; Doc. No. 14 ("Delaney Aff.") ¶ 3.)  Dean Raleigh and Principal Delaney

3

decided that Plaintiff's conduct violated SPCPA's anti-harassment policy, but did not rise to the level of sexual violence or assault. (Raleigh Aff. ¶ 7; Delaney Aff. ¶ 3.) Dean Raleigh and Principal Delaney intended to suspend Plaintiff for five-days per SPCPA policy. (Delaney Aff. ¶ 3.)

Later on October 9, 2017, Dean Raleigh and Principal Delaney met with Plaintiff and his parents. (Delaney Aff. ¶ 4; Raleigh Aff. ¶ 8.) When asked again about his conduct, Plaintiff admitted touching female students, but denied other aspects of the alleged behavior. (Delaney Aff. ¶ 5; Raleigh Aff. ¶ 9.) Because Plaintiff admitted to some, but denied other aspects, of the behavior, Principal Delaney decided to suspend Plaintiff for three days, rather than five. (Delaney Aff. ¶ 5.) Also on October 9, 2017, Dean Raleigh sent Plaintiff's parents a written notice of the suspension, which included a factual basis for the suspension, plan for readmission, alternative educational services available during the suspension, and a copy of the Minnesota Pupil Fair Dismissal Act. (Raleigh Aff. ¶ 12.) Plaintiff was allowed to return to school on October 12, 2017. (Jacobs Aff. ¶ 7.)

Plaintiff denies that he engaged in inappropriate behavior. Specifically, Plaintiff contends that he never touched another student inappropriately or with sexual intent and that he tried to explain how the allegations had been taken out of context and that others were false. (Doc. No. 25 ("Plaintiff Aff.") ¶¶ 4-5, 8.) Plaintiff also asserts that he was not accorded minimal due process prior to his suspension and that his suspension "affirmed by acquiescence" the stigmatizing allegations of sexual harassment. Plaintiff

4

maintains that he had the right to prior written notice of the allegations and an opportunity to be heard and understand the testimony that might be brought against him before being suspended.

Plaintiff further asserts that after he was suspended, students from SPCPA took to social media repeating the allegations against him, writing open letters to him, and even threatening physical assault.[1]  In addition, Plaintiff asserts that the students at SPCPA protested Plaintiff's return to school, and when he did return, he was subjected to isolation and scorn and was, generally, stigmatized and ostracized.  (John Doe Aff. ¶ 9.) On October 25, 2017, Plaintiff asserts that he was confronted by both student and adult protesters in front of the school, and that no one from SPCPA contacted Plaintiff or his parents regarding the protests or assisted him while at school.

Plaintiff filed the present action, asserting three causes of action:  (1) Education and Fourteenth Amendment Due Process, 42 U.S.C. § 1983; (2) Liberty Interest in Reputation and Fourteenth Amendment Due Process, 42 U.S.C. § 1983; and (3) Invasion of Privacy/Intrusion on Seclusion.  (Doc. No. 1, Verified Compl.)  Through the present motion, Plaintiff seeks a preliminary injunction "to ensure [Plaintiff] is given adequate due process to clear his name."  (Doc. No. 7 at 15.)

---

[1] The Court notes that these allegations are contained in the body of Plaintiff's memorandum in support of the present motion and supporting evidence is attached to Kane's Declaration.  In addition, Plaintiff relies on the allegations contained in the Verified Complaint.

## DISCUSSION

### I. Legal Standard

The Court considers four factors in determining whether to grant a preliminary injunction: (1) the threat of irreparable harm to the moving party; (2) the balance between this harm and the injury that granting the injunction would inflict on the non-moving party; (3) the moving party's likelihood of success on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc*., 640 F.2d 109, 113 (8th Cir. 1981). "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id.* A preliminary injunction is an "extraordinary remedy," and the moving party bears the burden of establishing the need for a preliminary injunction. *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011); *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

### II. Irreparable Harm

The Court first considers whether Plaintiff is likely to suffer irreparable harm if the Court denies its motion. To succeed in demonstrating a threat of irreparable harm, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Roudachevski*, 648 F.3d at 706 (citation omitted). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009).

Speculative injury is insufficient to justify a preliminary injunction. *Minn. Vikings Football Stadium, LLC v. Wells Fargo Bank*, 157 F. Supp. 3d 834, 840 (D. Minn. 2016); *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013).  The moving party's failure to show irreparable harm absent an injunction is sufficient to warrant denial of a request for preliminary injunctive relief. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 420 (8th Cir. 1987).  "A possibility of irreparable harm in the absence of an injunction is not sufficient; rather a plaintiff seeking a preliminary injunction must demonstrate that irreparable injury is *likely* in the absence of an injunction." *Paisley Park Enters., Inc. v. Boxil*, 253 F. Supp. 3d 1037, 1048 (D. Minn. 2017) (citation omitted).

Here, Plaintiff asserts that without a name-clearing hearing to remove false and stigmatizing allegations and the suspension from his academic record, Plaintiff has suffered and will continue to suffer damage to his education, reputation, and private interest in the performing arts.  Plaintiff asserts that he has been unable to return to school because the false accusations have created a hostile environment that has shut Plaintiff out of opportunities.  Plaintiff asserts that the threat of this harm continues.  For example, Plaintiff alleges that he was replaced by a professional dancer in a performance with an outside ballet company. (Verified Compl. ¶¶ 28, 40.)  In addition,  Plaintiff alleges that he has missed out on roles at a local children's theater company because he must be in "good standing" at SPCPA. (Doc. No. 22 ("James Doe Aff.") ¶¶ 13-14.)  Moreover, Plaintiff asserts that he is suffering on-going harm to his reputation through the Common

Application (college application) because he will have to disclose the suspension when he applies to colleges.

The Court finds that Plaintiff has not established a threat of irreparable harm that would justify injunctive relief.  First, a three-day suspension from school does not, in and of itself, establish irreparable harm.  *See, e.g.*, *Eason v. Indep. Sch. Dist. No. 11*, 598 N.W.2d 414, 419 (Minn. Ct. App. 1999).  Moreover, Plaintiff has failed to establish that reputational harm justifies injunctive relief.  *See, e.g.*, *Halikas v. Univ. of Minn.*, 856 F. Supp. 1331, 1334 (D. Minn. 1994) (citation omitted) (finding that claimed harm to reputation is not the kind of irreparable harm needed to justify injunctive relief); *see also Tokarz v. MERS, Inc.*, Civ. No. 17-1022, 2017 WL 3432100, at *4 (D. Minn. May 18, 2017) (explaining that reputational damages can be remedied with money damages). Additionally, Plaintiff's alleged harm caused by hostile interactions and being socially isolated has already occurred.  Plaintiff no longer attends SPCPA and any alleged past harm can be remedied with damages.  Moreover, Plaintiff's allegation that he has missed out on theater and dance roles at outside theater companies, while unfortunate, does not support a finding of irreparable harm.  Plaintiff has not pointed to non-speculative evidence that SPCPA shared information with these companies[2] or that any of the companies would alter their decisions if injunctive relief were granted.  Finally, any

---

[2] Indeed, all SPCPA officials have stated that they did not disclose the fact of or grounds for Plaintiff's suspension or the fact or substance of allegations made against Plaintiff to anyone other than SPCPA employees, board members, or other representatives.  (Jacobs Aff. ¶ 16; Delaney Aff. ¶ 7; Raleigh Aff. ¶ 13.)

alleged harm with respect to college applications is speculative. Plaintiff is a tenth-grader and he has not made any showing that he will imminently be applying to college. Moreover, SPCPA has submitted evidence that it has a practice of not disclosing student discipline information in response to requests from colleges. (Jacobs Aff. ¶ 15.) In addition, the Common Application allows for school officials to respond that "school policy prevents me from responding" to inquiries into disciplinary history, and SPCPA has submitted evidence that it enters that response for all students. (Jacobs Aff. ¶ 19, Ex. C.) Because there is no evidence that SPCPA would disclose Plaintiff's disciplinary history to colleges, there is no showing of a likelihood of imminent harm.

For the above reasons, the Court finds that Plaintiff has failed to demonstrate irreparable harm. Because this factor is dispositive, the Court declines to consider the remaining *Dataphase* factors. Based on the lack of irreparable harm, the Court denies Plaintiff's motion for a preliminary injunction.

## CONCLUSION

The Court notes that in denying Plaintiff's motion, the Court has not weighed in on the merits of the underlying allegations or Plaintiff's ultimate likelihood of prevailing on his claims. It is apparent to the Court, however, that the full-litigation of Plaintiff's claims will involve a discovery process that will likely negatively impact Plaintiff, other students, and the school community. In light of this, the Court urges the parties to seek an early resolution of this matter.

## ORDER

Based on the files, records, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Temporary Restraining Order, Preliminary Injunction, and Waiver of Security (Doc. No. [5]) is **DENIED**.

Dated:  December 13, 2017            s/Donovan W. Frank
                                     DONOVAN W. FRANK
                                     United States District Judge