UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE THE MATTER OF JOHN DOE, BY AND THROUGH HIS PARENTS, JAMES DOE AND JANE DOE,<br><br>Plaintiffs,<br><br>v.<br><br>SAINT PAUL CONSERVATORY FOR THE PERFORMING ARTS,<br><br>Defendant. | Civil File No. 17-cv-5032 (DWF/FLN)<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Request for jury trial |

## INTRODUCTION

The Conservatory's arguments in support of the motion to dismiss are, largely, a reiteration or expansion of its arguments made in response to the Plaintiffs' motion for preliminary injunction and temporary restraining order. [Docket Nos. 7, 11 & 21]. The Defendant argument of November 21, 2017, challenged the Plaintiffs' ability to successfully state any claim raised in the complaint. [Docket No. 11]. Plaintiffs replied to each challenge the Defendant presented on November 28, 2017. [Docket No. 28.]. The exception is the Defendant's qualified immunity defense and the "clearly established" constitutional rights argument at *Def. Brief* at 18.

On October 13, 2017, the Plaintiffs through counsel asked for all education, policy and procedures related to John Doe's discipline. *Decl. of Kane*. The Conservatory responded with some, but not all, of the records. After making a specific claim for all policies and procedures under Title IX, the Conservatory disclosed on December 4, 2017, for the first time, its policies and procedures numbered 102 (Equal Education Opportunity), No. 103 (Complaints – Students, Employees, Parents, Other Persons) and No. 413 (Title IX Harassment and Violence). *Decl. of*

1

*Kane*. Upon receipt of the additional policies and procedures, the Plaintiffs scheduled a meet and confer with Defendant on December 28, 2017, advising Defendant's counsel of its motion to amend. *Decl. of Kane*. Plaintiffs advised Defendant that they intended to amend the complaint on or about the same time as Defendant's motion to dismiss. *Decl. of Kane*.

The Court in its order on December 13, 2017 did not reach the merits of the arguments or claims. Memorandum Opinion and Order [Docket No. 28]. Instead, the Court denied Plaintiffs' preliminary relief because it found no irreparable harm to John Doe, his education, reputation or private interests.

### STANDARD OF REVIEW

When evaluating a motion to dismiss under Rule 12(b)(6), the Court assumes the facts in the Complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the non-moving party. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555." This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

In deciding a motion to dismiss, the Court considers "the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint." *PureChoice, Inc. v. Macke,* Civil No. 07–1290, 2007 WL 2023568, at *5 (D.Minn. July 10, 2007) (citing *Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir.1999)).

The Plaintiffs have provided specific facts and detailed allegations that support the claims before the Court.

The Conservatory will argue that it was prejudiced because the Plaintiffs responded to the motion to dismiss 21 days before the hearing date rather than 21 days after the motion was served. Prejudice does not exist where the Conservatory arguments and Plaintiffs' response are known and duplicative of the arguments made for and against Plaintiffs' motion for preliminary injunction. The Conservatory's claim of prejudice is further eroded because it refused to timely provide policies and procedures related to Title IX enforcement and its procedures for a student or parent complaint. *Decl. of Kane*. The failure to disclose Title IX policies and procedures in, in itself, a significant violation of the law. See, 34.C.F.R. § 106.9. The full set of policies and procedures provided on December 10, 2017 were vital from the outset and support the amendments to the complaint.

The Plaintiffs request that the Conservatory's motion to dismiss be deferred until the Plaintiffs motion to amend the complaint can be heard. *See Pure Country, Inc. v. Sigma Chi Fraternity,* 312 F.3d 952, 956 (8th Cir. 2002). The Plaintiffs have filed a notice of motion to amend the complaint to be heard on March 5, 2018 before Magistrate Franklin Noel. The parties, through counsel, met by telephone to discuss Plaintiffs' motion to amend the complaint on December 28, 2017 but were unable to reach an agreement. *Decl. of Kane*.

I. **PLAINTIFF JOHN DOE HAS PLED THE CLEARLY IDENTIFIED CONSTITUTIONALLY PROTECTED INTERESTS THE CONSERVATORY INFRINGED.**

John Doe's constitutional right to an education in Minnesota is a clearly established. Complaint at 11, ¶ 37, See Minn. Const., Article XIII, § 1. John Doe's property interest in public education is clearly established. *Goss v. Lopez,* 419 U.S. 565, 573, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); see also Minnesota Pupil Fair Dismissal Act. John Doe's liberty interest in his reputation

3

is clearly established. *J.K. v. Minneapolis Public Schools*, 849 F.Supp.2d, 865, 871 (D. Minn. 2011). John Doe's right to due process prior to the deprivation of these interests is clearly established. *Id.* John Doe's rights are further identified and established by the Conservatory's adoption of policies and procedures regarding those rights. *Ex. 11-14*.

## II. PLAINTIFFS' HAVE PLED 1983 DUE PROCESS CLAIMS.

The infringement of John Doe's education rights far exceeds a three-day suspension, as the Plaintiffs have previously pled and argued. While the three-day suspension on October 9, 2017 kicked this matter off, it was only the beginning of the damage to John Doe and his rights and interests. *Aff. of James Doe* [Docket No. 22]. Immediately, John Doe became the target of increasing harassments, threats, walk-out, protests and ostracism by his peers at the Conservatory. *Complaint at 6, ¶22*; *Aff. of James Doe*; *Aff. of John Doe*. Even before he was able to return from the suspension, the Conservatory threatened John Doe with suspension and expulsion upon his return because other female students had come forward. *Aff. of James Doe.* The Conservatory reported to law enforcement that 10 students had made allegations against John Doe. *Exhibit No. 10*. This, in turn, was reported to the press. *Complaint at 10, ¶ 34, n. 2*. Both peers and adults clearly knew his identity as he was confronted by adult protesters, his peers at school and by adults in the performing arts community about the allegations. *Complaint at 9, ¶33*. The Conservatory was knowingly indifferent to John Doe's rights when it failed to provide additional due process or protect John Doe from the damage the allegations and suspension were having on his education, reputation and private interests. Consequently, the education environment became so hostile toward him that he was required to leave the Conservatory.

The Conservatory's Harassment and Violence, Sex Nondiscrimination and Student Complaint policies provided to Plaintiffs on December 4, 2017 set forth additional due process for both the accuser and the accused when allegations of sexual harassment and violence, sexual discrimination or harassment and bullying are made. *Exhibit No. 11-14*. The Conservatory failed to comply with Title IX, as alleged in the proposed amended complaint, by failing publish and provide the policy and procedure available to students and parents, and by failing to comply by identifying a Title IX coordinator (Superintendent) to take the reports and initiate investigations consistent with its policies and procedures. The Conservatory further failed to follow its own Student Complaint policy and procedure by ignoring John Doe's multiple complaints of harassment, violence and bullying by his peers.

The Conservatory argued that the Plaintiffs have failed to plead a due process claim that can survive summary dismissal. *Def. Brief at 8*. This argument is substantially similar to the argument found in Docket No. 11, pp. 12-14. The Conservatory again urged the Court to adopt a factual determination that the only deprivation of John Doe's rights was the three-day suspension. By limiting the infringement to a three-day suspension, the Conservatory again rely upon the rudimentary due process due for a suspension of less than 10 days established in *Bystrom v. Fridley High School*, 686 F.Supp. 1387, 1393 (D. Minn. 1987) and *Riehm v. Engelking*, 2007 WL 37799, *7 (D. Minn., Jan 4, 2007).

Addressing the Plaintiffs assertion that John Doe was denied the minimal due process at the time of his suspension, the Conservatory focused their argument on the due process to which a student is entitled under *Goss v. Lopez*, 419 U.S. 565, 581 (1975). *Id. at 8 - 9*.

In the case before the Court, the Plaintiffs have not only alleged that the Conservatory failed to provide the minimal due process for the suspension, but also the due process to which

5

John Doe was entitled as the damaged accrued to his education and reputation. See Memo in Reply [Docket Nos. 7 and 21].

The Conservatory, relying upon the *Goss* standard, argued that there "can be no question that SPCPA satisfied these requirements." *Def. Brief at 10*. In support of that assertion, the Conservatory urges the Court to accept a whittled down version of its due process responsibilities. According to the Conservatory, John Doe's attendance in a meeting, without prior notice, a *Tennessen* warning or any opportunity to respond, wherein personnel provides incomplete, ambiguous and unattributed allegations is sufficient to meet minimal due process.

In addition to asserting that minimal due process was not provided to John Doe, the Plaintiffs are asserting through the amendments that the Conservatory was responsible to provide John Doe with notice of and conform with the due process procedures in the Harassment and Violence policy. *Exhibit No. 14*.

**A. *John Doe's Liberty Interest in His Reputation and Stigma Plus Pleading*.**

Similar to the argument found at Docket No. 11, p. 14, the Conservatory maintained that there must be some harm greater than damage to John Doe's reputation alone and that Plaintiffs have failed to meet the stigma-plus test. *Def. Brief* at 6.

As the court in *J.K. v. Minneapolis Public Schools*, 849 F.Supp.2d, 865, 878 (D. Minn. 2011), recognized "[u]nder well-established law, J.K. has a constitutionally protected liberty interest in his reputation, with an important qualification: The Due Process Clause of the Fourteenth Amendment does not protect a person's reputation alone. *See Paul v. Davis,* 424 U.S. 693, 711–12, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Gunderson v. Hvass,* 339 F.3d 639, 644 (8th Cir.2003) ('Damage to reputation alone ... is not sufficient to invoke the procedural protections of the due process clause.'). Rather, to make out a reputation-based procedural-due-process

claim . . . [the student] must establish that the transfer will inflict both of two types of harm on him: (1) damage to his reputation and (2) a tangible burden of some kind. *Gunderson,* 339 F.3d at 644. Such claims are known as 'stigma-plus' claims. *Id.* The damage to reputation is the "stigma," and the tangible burden is the 'plus.'" In *J.K.* the court found that an administrative transfer from one public school to another was a sufficient "tangible burden." *Id*. at 878. The Plaintiffs have averred many tangible burdens including harassment, threats of violence, threats of protests and a protest, and ultimately exclusion from the Conservatory all due to the false allegations promulgated by the Conservatory.

This Court has recognized that an individual's liberty interest in reputation is analyzed within the context of defamation claims:

> A person's reputation, by its nature, exists in the public sphere, and undisclosed information cannot cause reputational harm. Thus, in the government-employment context, courts routinely hold that an employee bringing a stigma-plus claim after being fired must show that the government somehow publicized damaging information about the employee. *See, e.g., Brown v. Simmons,* 478 F.3d 922, 923 (8th Cir.2007) ("To state a 'stigma plus' claim, [a government] employee must allege: (1) an official made a defamatory statement that resulted in a stigma; (2) the defamatory statement occurred during the course of terminating the employee; (3) the defamatory statement was made public; and (4) an alteration or extinguishment of a right or legal status." (citations omitted)).

*Id.* (citing *Mascho v. Gee,* 24 F.3d 1037, 1039 (8th Cir.1994)). The Conservatory has asserted that it did not disclose information related to the allegations against John Doe and his discipline. The Plaintiffs have alleged that not only did the Conservatory acquiesce in the false allegations by disciplining him without adequate due process, but also the Conservatory did disclose the information to law enforcement, thus making the allegations public. Law enforcement, in turn, disclosed it to the media. *Ex. 10*. The Conservatory has not provided any policy or procedure that required such disclosure to law enforcement or the reason for disclosing such highly charged

information to law enforcement, given Ms. Delaney's significant reservations about the veracity of the additional allegations.

### III. PLAINTIFFS HAVE PROPERLY ALLEGED A *MONELL* CLAIM AGAINST THE CONSERVATORY.

According to Defendant, the Plaintiffs claim fail under the Monell standard because there were no underlying violations of John Doe's constitutional rights. *Def. Brief at 15-16*. Second, Defendant alleged that Plaintiffs failed to explain how the Conservatory policy deprived him of any constitutional right. *Def. Brief at 16*. Defendant characterize Plaintiffs' factual averments as "a formulatic recitation of the elements of a cause of action." *Def. Brief at 16*. Finally, Defendant's assert that a three-day suspension is insufficient to warrant constitutional protection. *Def. Brief at 16*.

The Plaintiffs responded to the *Monell* argument in its reply memorandum. [Docket No. 21].

Accordingly, under *Monell,*

> [A] municipality may be held liable for the unconstitutional acts of its officials or employees when those acts implement or execute an unconstitutional municipal policy or custom. For a municipality to be liable, a plaintiff must prove that a municipal policy or custom was the moving force [behind] the constitutional violation.

*Mettler v. Whitledge,* 165 F.3d 1197, 1204 (8th Cir.1999) (citations omitted). Courts are to examine related to policy or custom. The Court in *Connick v. Thompson,* ⎯⎯ U.S. ⎯⎯, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011) found:

> "[A] 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Id.* (citation omitted). Proof of a custom requires:
>
> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

(2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
(3) Th[e] plaintiff['s] injur[y] by acts pursuant to the governmental entity's custom, i.e., [proof] that the custom was the moving force behind the constitutional violation.

*Id.* (citation omitted).

According to affidavits presented by the Conservatory Ms. Delaney as director and principal and Callie Jacobs as Superintendent of the Conservatory, were the final policymaking authority for disciplinary actions under the Harassment and Violence policy at the Conservatory. *Aff. of Delany* [Docket No. 14]; *Aff. of Jacobs* [Docket No. 12].

The Plaintiffs' facts as alleged in the complaint met the pleading requirements. While it is correct that "[l]iability for an unconstitutional custom or usage ... cannot arise from a single act," *McGautha v. Jackson Cnty., Mo., Collections Dep't,* 36 F.3d 53, 57 (8th Cir.1994), Plaintiffs have alleged more than a single act here. The Plaintiffs have alleged not only did the Conservatory deny John Doe minimal due process, but it persisted in denying him due process consistent with its own Harassment and Violence procedure as John Doe's complaints related to his own harassment, violence and bullying were ignored. It is reasonable to conclude that that the Conservatory engaged in a "continuing, widespread, persistent pattern of unconstitutional misconduct" with John Doe. *Mettler,* 165 F.3d at 1204.

The unconstitutional custom persisted despite the due process set forth in Conservatory's Harassment and Violence policy. Plaintiffs' have also alleged in the proposed amended complaint that the Conservatory did not comply with its Title IX obligations.

The Conservatory has argued that by not overtly stating a *Monell* claim within the complaint, the claim must fail. However, the record before the Court supports that the Plaintiffs gave notice to the flawed due process provided to John Doe, asked for reasonable due process to clear his name and has been persistently denied those rights by the final decisionmakers within the

Conservatory. *Aff. of Delaney* at 1; *Aff. of Jacobs* at 1. Finally, the Plaintiffs continued to assert his right to adequate due process related to the suspension and the expanding damage to his education, private interests, and reputation. Specifically, in a meeting with Jacobs and Delaney on October 16, 2017, the Plaintiffs request adequate due process for the suspension, a means to appeal the decision and correct the due process deficiencies, and any additional due process to address the increasing damage to his interests. Complaint at p. 7-8, ¶ 24-25; *Aff. of James Doe.* In each instance, those individuals in authority persisted in refusing to provide John Doe adequate due process for the initial suspension, but also due process to which he was entitled under the Conservatory's policies and procedures as well as the continuing harm to his education, reputation and private interests.

The Plaintiffs are seeking to amend the complaint to allege that the Conservatory violated its Harassment and Violence and Sex Nondiscrimination policies. *Exhibit No. 11, 13 and 14*. The Conservatory's Harassment and Violence policy was to provide John Doe greater due process for allegations of sexual harassment. *Ex. 11*. In addition to denying John Doe access to the Harassment and Violence and Sex Nondiscrimination policies and attendant due process, the Conservatory was deliberately indifferent to John Doe's own complaints of harassment, violence and bullying that created a hostile education environment.

## IV. THE CONSERVATORY IS NOT ENTITLED TO QUALIFIED IMMUNITY.

Defendant raised a qualified immunity defense in its motion to dismiss. Relying upon the argument that John Doe did not have a clearly established constitutional right to which a reasonable person would have known that the conduct was unlawful. *Def. Brief at 18*. The argument is without merit and is relevant to Plaintiffs' motion to amend its complaint. Plaintiffs are moving to amend the complaint to include a claim under Title IX of the Education

Amendments of 1972, 20 U.S.C. § 1681 and expand upon the denial of due process under the Conservatory's recently provided policies and procedures. After the motion for preliminary injunction was heard and argued, the Conservatory disclosed its full harassment and violence policy, sex nondiscrimination, student complaint and equal education policies and procedures, none which were set forth in the Student Handbook. See *Ex. 3* [Docket No. 1], *Exhibits 11 -14*.

V. **PLAINTIFFS' STATE CLAIMS SURVIVE SUMMARY DISMISSAL**.

The Conservatory argued that John Doe failed to state a claim of intrusion upon seclusion. *Def. Brief* at 19-20; [Docket No. 11, pp. 17-18]. In support of its motion to dismiss, the Conservatory argued that John Doe's complaint is with other students and that the Conservatory had an affirmative duty under Title IX to act. *Id*. The Conservatory urged an expansive reading of the Supreme Court's decision in *Bd. of Ed. of I.S.D. No. 92 of Pottawatomie Cty. v. Earls*, 536 U.S. 822, 830 (2002) that public school students had limited rights to privacy regarding discipline. *Id*. at 19. *Earls* is distinguishable from the instant case because Earls involved drug testing for students who had voluntarily participated in extracurricular athletic activities in a public school setting wherein drug use was a demonstrable problem.

To be clear, the intrusion is not the result of the interview conducted by Conservatory personnel with John Doe regarding the allegations. The intrusion is premised upon the Conservatory's actions in response to the interview. In this case, the intrusion upon seclusion took place when the Conservatory failed to provide John Doe with minimal due process, access to the policies and procedures that afforded him greater due process, the greater process due to him, the acquiescence in the false allegations by immediately removing him from the Conservatory as if he were a threat to student safety, the disclosure of the allegations to law

11

enforcement thus making the allegations public, the refusal to respond when John Doe provided multiple harassment and violence complaints thus forcing John Doe's departure from the Conservatory. Had the Conservatory acted consistent with its duties and obligations as set forth in law and its own policies and procedures, John Doe would not have been harmed.

Previously, Plaintiffs argued that implication of the facts and uncannily accurate disclosures by John Doe's peers in social media, it is reasonable to conclude that accurate private, facts regarding the length of John Doe's suspension were disclosed by Ms. Raleigh to the complaining students as she confirmed would be the case in a meeting with the Plaintiffs. *Aff. of James Doe* [Docket No. 22].

### VII. PLAINTIFFS IS SEEKING TO AMEND THE COMPLAINT.

The Plaintiffs met and conferred with Defendant's counsel on December 28, 2017 to discuss Plaintiffs' amendments to the complaint, as well as timing the motion to amend with the motion to dismiss. The Plaintiffs have scheduled March 5, 2017 for the motion to be heard. At that time, the Plaintiffs will ask the Court to accept the supplemented facts and addition of claims under Title IX of the Education Amendments of 1972 and negligence. *Ex. 15*.

The policies and procedures disclosed by the Conservatory on December 4, 2017 forms the basis for liability for due process claims under the Title IX and the negligence of the Conservatory given those duties. The Plaintiffs, in support of their amendments, set forth specific facts and attendant duties to which the Conservatory did not comply. *Ex. 15*.

### CONCLUSION

The Plaintiffs have pled claims upon which relief can be granted. There are sufficiently specific facts to support the claims. Thus, Defendant's motion to dismiss should be denied.

In light of the motion to amend, the Plaintiffs are asking the Court to defer its ruling on the motion to dismiss until after the motion to amend decided.

Respectfully submitted,

**KANE EDUCATION LAW, LLC.**

Dated: February 9, 2017     /s/ Margaret O'Sullivan Kane
Margaret O'Sullivan Kane /ID # 220243
420 Summit Avenue
Suite 306
Saint Paul, Minnesota 55102
Tel. 651.222.8611
Fax. 651.221.2623
mkane@kaneeducationlaw.com

Attorney for Plaintiffs