UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re the matter of John Doe, by and through his parents, James Doe and Jane Doe,

Plaintiffs,

v.

Saint Paul Conservatory for the Performing Arts,

Defendant.

Civil No. 17-5032 (DWF/FLN)

**ORDER**

_____

Margaret Kane for Plaintiffs.
Christian Shafer for Defendant.
_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on Plaintiffs' motion for leave to amend the complaint (ECF No. 29). For the reasons set forth below, Plaintiffs' motion for leave to amend the complaint (ECF No. 29) is **GRANTED in part, and DENIED in part**.

### I. STATEMENT OF FACTS

**1. Background**

In September of 2017, John Doe began attending Saint Paul Conservatory for the Performing Arts ("SPCPA") as a sophomore. ECF No. 1 ¶ 10; ECF No. 38, Ex. 14 ¶ 10. On October 9, 2017, John Doe was pulled out of class by the school's guidance counselor, Ilah Raleigh, and informed that female classmates had made allegations of harassment against him. *Id.* ¶ 12. Plaintiffs allege that John Doe denied the allegations. *Id.* ¶ 13. Plaintiffs James Doe and Jane Doe, John Doe's parents, were called and informed that John Doe was being suspended immediately for sexual harassment. *Id.* ¶ 15. They were also notified that John Doe had admitted to the allegations, and that there was an earlier incident that had not been reported or investigated by the school. *Id.* ¶¶ 15, 17.

John Doe's parents asked that the matter remain private, and according to Plaintiffs, both Ms. Raleigh and SPCPA Director Ellen Delaney assured them that it would remain confidential and would not affect John Doe's college application. *Id.* ¶ 16. John Doe was suspended for three days. *Id.* ¶ 15.

After his suspension, John Doe became the target of bullying. *Id.* ¶ 21. Students threatened John Doe on social media, and an Instragram account was created protesting John Doe's return to school. *Id.* John Doe was also ostracized at school, with students refusing to sit near him or work with him on projects. *Id.*

On October 12, 2017, Plaintiffs received John Doe's Notice of Suspension, which stated that:

Three students have reported to Ms. Raleigh a pattern of harassment that [John Doe] engaged in including inappropriate touch: sitting too close, touching without permission, grabbing a student's leg by the crotch, licking a student's hand, grabbing a student from behind and groping. Each student has communicated verbally and non-verbally to [John Doe] that they want him to stop. In each case, he escalates his behaviors.

*Id.* ¶ 29.

The parties, along with their attorneys, met on October 16, 2017, before John Doe's return to school. ECF No. 38, Ex. 14 ¶ 24. During the meeting, Plaintiffs were asked to sign a document which stated: "If [John Doe] were to violate these policies in the future, he would received the following discipline: 2nd offense, within one calendar year: Expulsion." *Id.* Plaintiffs allege that they challenged the allegations and asked for all information related to the claims against John Doe. *Id.* SPCPA provided Plaintiffs with Ms. Raleigh's notes related to the incident, and John Doe was permitted to return to school. *Id.* ¶ 24, 26. An adult monitor was also put in place due to the social media threats. *Id.* ¶ 26.

On October 25, 2017, a group of individuals protested John Doe's return to school. *Id.* ¶ 33.

The protestors were featured on the evening news, and it was reported that more students had made allegations of sexual harassment against John Doe, and that SPCPA was working with law enforcement and the Minnesota Department of Education to address the issue. *Id.* ¶ 34. On October 26, 2017, John Doe stopped attending SPCPA, and started attending an online school before transferring to a public school. *Id.* ¶ 43.

### 2. School Policies

SPCPA's Student and Parent Handbook permits the removal from class or dismissal of a student where the students conduct is "significantly disrupting students' rights to an education; disrupting the ability of school personnel to perform their duties; disrupting school-sponsored activities; engaging in conduct that endangers other pupils or surrounding persons (including school district employees or property of the school)" or "significantly interfering with a teacher's ability to teach or communicate effectively with students in a class or interfering with other students' ability to learn." *Id.* ¶ 18; ECF No. 38, Ex. 3 at 22.  The Handbook further provides where action is taken against a student, as a result of a breach of established policies, the student is entitled to due process as defined by various Minnesota Statutes, and the student will be provided an opportunity to have a hearing if the action is either exclusion or expulsion. *Id.* ¶ 36 , Ex. 3 at 21.

Further, SPCPA Policy No. 102 ensures that all students at SPCPA receive equal educational opportunity in all areas of education including academics, course work, co-curricular and extracurricular activities, or other rights or privileges of enrollment. ECF No. 38, Ex. 13 ¶ 41. SPCPA Policy No. 103 outlines the procedure for reporting and investigating a complaint. *Id.*

SPCPA also has a Harassment and Violence policy which provides that the school prohibits any form of harassment or violence on the basis of race, color, creed, religion, national origin, sex,

gender, age, marital status, familial status, status with regard to public assistance, sexual orientation, or disability. ECF No. 38, Ex. 14 ¶ 39; ECF No. 38, Ex. 9 at 1. It defines harassment as any physical or verbal conduct, including electronic communications, that interferes with a students educational performance, or otherwise adversely affects their educational opportunities. ECF No. 38, Ex. 9 at 2. Under the policy, anyone who believes they have been a victim of harassment or violence is to report it to the principal, who is required to ensure that the procedures entailed in the harassment and violence policy are fairly and fully implemented. ECF No. 38, Ex. 14 ¶ 41; ECF No. 38, Ex. 11 at 5. Upon receipt, the principal is to notify the superintendent immediately, without screening or investigating the report. *Id.* The superintendent, within three days of receipt of the complaint, shall began an investigation into the alleged conduct, and in determining whether the alleged conduct constitutes a violation of the Harassment and Violence policy, may consider past incidents, the context of the alleged incident, and all the facts and surrounding circumstances. *Id*. ¶ 41, 43; *id*. at 7. During the process, the alleged perpetrator shall be allowed the opportunity to present a defense during the investigation and prior to any imposition of discipline. *Id*. Once the investigation is complete, the superintendent shall provide the complaining party the outcome of the investigation in writing. *Id*. ¶ 42; *id*.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 15 governs the amendment of pleadings in federal actions. The Rule provides that a party may amend its pleading once as a matter of course within 21 days of service, otherwise only with either the opposing party's written consent or with the court's leave. *See* Fed. R. Civ. P. 15(a). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, there is no absolute right to amend. *See Foman v. Davis*, 371 U.S. 178, 182

(1962); *see also Ferguson v. Cape Girardeau Cnty.*, 88 F.3d 647, 650–51 (8th Cir. 1996). The court may deny a request for leave to amend the pleadings, where there is "undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987).

Under this framework, "[d]enial of a motion for leave to amend on the basis of futility means the district court has reached the legal conclusion that the amended [pleading] could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010). In analyzing the adequacy of a complaint under Rule 12(b)(6), the court must construe the complaint liberally and afford the plaintiff all reasonable inferences to be drawn from those facts. *See Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002). For the purpose of a motion to dismiss, facts in the complaint are assumed to be true. *In re Navarre Corp. Sec. Litig.*, 299 F.3d at 738. To avoid dismissal under Rule 12(b)(6), a complaint must allege facts sufficient to state a claim as a matter of law and may not merely state legal conclusions. *See Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must contain enough facts to state a claim for relief that is "plausible on its face," and a claim has facial plausibility only when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is not akin to a "probability requirement," but it calls for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678.

**IV. CONCLUSION OF LAW**

Plaintiffs seek to amend their Complaint to add one count pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, and one count of negligence. *See* ECF No. 38, Ex. 15 at 177–85. Plaintiffs assert that in seeking to amend their Complaint, there is no undue delay, Plaintiffs have not engaged in bad faith, and the proposed amendments are not futile. ECF No. 37 at 21–22. Further, with regard to their Title IX claim, Plaintiffs argue that they have alleged sufficient facts to support their claim that SPCPA was deliberately indifferent to John Doe's rights under Title IX, and Plaintiffs are able to show that SPCPA engaged in a persistent pattern onof denying John Doe the same protections as his accusers. *Id.* at 20. Similarly, Plaintiffs argue that they have met the pleading standard for their claim of negligence by properly alleging that SPCPA owed John Doe a duty of care as set forth in their policies and procedure, that SPCPA breached that duty of care, and its breach resulted in substantial damage to the Plaintiffs. *Id.* at 21. SPCPA asks the Court to deny Plaintiffs' motion to amend because Plaintiffs amendments are futile.

**1**. **Title IX Claim**

Plaintiffs seek to amend their Complaint to include facts and claims related to SPCPA's actions or failures under its Title IX policies. Plaintiffs claim that SPCPA: (1) did not publish its Title IX regulations or make them available to John Doe and his parents; (2) did not follow its own Title IX policies in investigating the allegations against John Doe; and (3) did not follow its Title IX policies with regard to John Doe's own complaints of harassment and violence. *See* ECF No. 37. SPCPA responds that there is no private right of action for technical violations of Title IX regulations, and as such, Plaintiffs claims related to SPCPA's alleged violations of its Title IX policies is futile. *See* ECF No. 44.

"Title XI states '[n]o person in the United States shall, on the basis of sex, be excluded from

6

participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.'" *Doe v. Univ. of St. Thomas*, 240 F. Supp. 3d. 984, 989 (Dist. Minn. 2017) (quoting 20 U.S.C. § 1681(a)). However, "Title IX is not an invitation for courts to second-guess disciplinary decisions of colleges or universities." *Univ. of St. Thomas*, 240 F. Supp. At 989.. "Title IX should be construed to give '[s]chool administrators . . . the flexibility they require' to initiate a reasonable disciplinary response.'" *Id.*

"In *Gebser v. Lago Vista Independent School District*, the Supreme Court noted that it had 'never held . . . that the implied private right of action under Title IX allows recovery in damages for violation of . . . administrative requirements.'" *Id.* (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292 (1998)). Specifically noting that a school districts "failure to promulgate a grievance procedure does not constitute 'discrimination' under Title IX" but that "the Department of Education could enforce the requirement administratively." *Gebser*, 524 U.S. at 292. Based on this holding, Plaintiffs Title IX claim, in so far as it relies solely on violations of regulations promulgated under Title IX, is futile. *See Doe*, 240 F. Supp. 3d at 989. Put differently, under *Gebser*, even if this Court was to find that Plaintiffs have made a plausible claim that SPCPA failed to meet the regulatory requirements of Title IX, they would have no private right of action for such violations, and thus, their claim based on those facts would be futile. The Court's analysis does not end there.

Plaintiffs also claim SPCPA denied John Doe the protections of Title IX in their disciplinary process. *See* ECF No. 37. Title IX claims based on disciplinary proceedings can be analyzed under either the erroneous outcome standard, the deliberate indifference standard, the selective enforcement standard, or the archaic assumptions standards. *Stenzel v. Peterson*, Civ. No. 17-580

(JRT/LIB), 2017 WL 4081897 at *4 (D. Minn. Sept. 13, 2017). "To allege a Title IX claim based on a disciplinary proceeding under either erroneous outcome or deliberate indifference theory, [plaintiffs] must plausibly allege circumstances suggesting gender bias motivated [the school]'s disciplinary proceedings." *Univ. of St. Thomas*, 240 F. Supp. 3d at 990. "[A] plaintiff alleges a Title IX deliberate indifference claim by 'demonstrat[ing] . . . an official of the institution who had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct' direct at the plaintiff." *Id.* at n.2. A selective enforcement claim "asserts that, regardless of the student's guilt or innocent, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Yusuf v. Vassar Coll.*, 35 F. 3d 709, 715 (2nd Cir. 1994). "The 'archaic assumptions' standard, which has been applied where plaintiffs seek equal athletic opportunities, finds discriminatory intent in actions resulting from classifications based upon archaic assumptions." *Mallory v. Ohio Univ.*, 76 Fed. Appx. 634, 638 (6th Cir. 2003).

Plaintiffs allege in their Amended Complaint that SPCPA denied John Doe the protections of its Title IX policy by immediately reaching the conclusion that he was guilty, without properly investigating the claim, because of his gender and the archaic notions of gender and sex. ECF No. 13 ¶ 38. Further, that female students accused of sexual harassment are provided additional due process procedures denied to John Doe, *id.* ¶ 41, and that SPCPA ignored John Doe's reports of harassment and bullying because he was male. *Id.* ¶ 46.

The Court finds that Plaintiffs' claims are conclusory, and fail to allege any plausible facts to support their claim that SPCPA's disciplinary proceedings, or its decision to initiate the disciplinary proceeding, was motivated by John Doe's gender as opposed to the allegations of sexual harassment made by his peers. Additionally, Plaintiffs' claim that SPCPA treated other

8

female students more favorable than John Doe is insufficient to show that John Doe's disparate treatment was because of his sex. *See Univ. of St. Thomas*, 240 F. Supp. 3d at 991 (quoting *Salau v. Denton*, 139 F. Supp. 3d 989, 999 (W.D. Mo. 2015)). Because "[d]emonstrating that a [school's] official is biased in favor of the alleged victims of sexual assault claims, and against the alleged perpetrators, is not the equivalent of demonstrating bias against male students." *Sahm v. Miami Univ.*, 110 F. Supp.3d 774, 778 (S.D. Ohio 2015). As such, Plaintiffs Amended Complaint is wholly void of any facts to support a claim under Title IX. Plaintiffs' Title IX claim is futile and would not survive a motion to dismiss.

Therefore, Plaintiffs' motion for leave to amend their Complaint to add a claim under Title IX is denied.

### 2. Negligence Claim

Plaintiffs also seek to bring an additional claim of negligence. Plaintiffs allege that SPCPA owed John Doe a duty of care, and as a result of SPCPA's breach of that duty of care, John Doe suffered injury.

For a claim of negligence to survive a motion to dismiss, plaintiff must allege that: (1) the defendant owed them a duty of care; (2) that the defendant breached that duty; (3) that plaintiff suffered an injury; and (4) defendant's breach of the duty of care was the proximate cause of plaintiff's injury. *Univ. of St. Thomas*, 240 F. Supp. 38 at 994 (citing *Glorvigen v. Cirrus Design Corp.*, 816 N.W.2d 572, 585 (Minn. 2012)); *see also Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995). "Minnesota law follows the general common law rule that a person does not owe a duty of care to another—e.g., to aid, protect or warn that person—if the harm is caused by a third party's conduct." *Id.* at 995 (quoting *Doe 169 v. Brandon,* 845 N.W.2d 174, 177–78 (Minn. 2014)).

9

However, schools have a duty to use reasonable care to protect their students. *See Kingsley v. Indep. Sch. Dist. No. 2, Hill City,* 251 N.W.2d 634, 635 (Minn. 1977); *Fallin v. Maplewood–North St. Paul Dist. No. 622*, 362 N.W.2d 318, 321 (Minn. 1985).

Construing the Amended Complaint in a light most favorable to the Plaintiffs, the Court finds that Plaintiffs's Amended Complaint sufficiently alleges that (1) SPCPA owed John Doe a duty of care based on its own policies and procedures; (2) SPCPA breached its duty of care to John Doe; (3) John Doe sustained injuries; and (4) SPCPA's breach was the proximate cause of John Doe's injuries. ECF No. 38 at ¶¶ 97–99. SPCPA, nevertheless, argues that Plaintiffs' amendment is futile because SPCPA is entitled to official immunity.

Minnesota's common law "doctrine of official immunity provides that 'a public official charged by law with duties which call for the exercise of his judgment or discretion is not personally liable to an individual for damages unless he is guilty of a willful or malicious wrong.'" *Anderson v. Anoka Hennepin Indep. Sch. Dist. 11*, 678 N.W.2d 651, 655 (Minn. 2004). Additionally, "if a public official is found to be immune from suit on a particular issue, his or her government employer will be vicariously immune from a suit arising from the employee's conduct and claims against the employer . . . ." *Id.* Put differently, where official immunity protects a public official, vicarious official immunity protects the public agency that employs that official. *See Schroeder v. St. Louis Cnty*, 708 N.W.2d 497, 508 (Minn. 2006) (extending vicarious official immunity to public entities). Official immunity, however, does not protect a public official "when they are charged with the execution of ministerial, rather than discretionary, functions, that is, where 'independent action' is neither required nor desired." *Anderson,* 678 N.W.2d at 655. Public officials are also not entitled to official immunity for discretionary decisions where the officials acted willfully or with malice.

10

*Id.* at 662.

At this stage of the proceeding, construing the Plaintiffs' Amended Complaint liberally, and affording Plaintiffs all reasonable inferences in their favor, the Court finds that Plaintiffs have alleged sufficient facts to survive a motion to dismiss. Further, SPCPA's claim of official immunity does not compel the denial of Plaintiffs' motion to amend. At best, SPCPA's official immunity defense creates a genuine issue of material fact regarding whether SPCPA's officials acts willfully or with malice. Therefore, Plaintiffs' motion to amend is granted as to their claim of negligence.

### IV. ORDER

Based upon all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' motion for leave to amend is **GRANTED in part and DENIED in part**, as follows:

1. Plaintiff's motion for leave to amend is **DENIED** as to Count III.

2. Plaintiffs' motion for leave to amend is **GRANTED** as to Count IV.

DATED: May 31, 2018                    /s/ Franklin L. Noel
                                        FRANKLIN L. NOEL
                                        United States Magistrate Judge